## LANZA v. UNITED STATES.
### No. 3941.

District Court, N. D. Ohio, W. D.
March 10, 1938.

Frazier Reams, of Toledo, Ohio, for plaintiff.

Gerald P. Openlander, Asst. U. S. Atty., of Toledo, Ohio.

KLOEB, District Judge.

This is an action at law, submitted to the court upon the pleadings, oral presentation, briefs, stipulations, and waiver of jury.

The facts briefly are these:

Domenico Garisto, an Italian subject, was residing, and working, in the city of Lima, Ohio, at the time of his death on the 3d day of October, 1917.

Prior to this date, and beginning on December 6, 1915, and ending on the 28th day of October, 1916, he had made application for, and had purchased, ten postal savings certificates of the United States Government, at the post office in Lima, Ohio. These were in denominations of $100 each. In the application to open a postal savings account, which he executed on the 6th day of December, 1915, and being the Government's Form P.S. 600, he made

the following statement: "I, Domenico Garisto, having no Postal Savings deposit at this or any other Post Office, hereby make application to open an account *subject to the rules and regulations prescribed by the Postmaster General.*"

No administration was had of the estate of Garisto following his decease, and about six months thereafter, i. e., on March 29, 1918, one N. Cerri, as the Royal Italian Consular Agent at Cleveland, Ohio, executed the Post Office Department application Form P.S. 112, and filed it on the same date. His claim was for the sum of $1,036, being the total of the postal savings deposits, plus the accrued interest. The claim was supported by receipted bills, showing the payment of the funeral expenses of the deceased.

On June 4, 1918, the Third Assistant Postmaster General approved Mr. Cerri's claim for payment.

On August 1, 1918, duplicate postal savings certificates were issued, because the Italian Consular Agent did not have, and apparently could not locate, the original certificates.

On August 8, 1918, the duplicate postal savings certificates were properly endorsed by N. Cerri, and the proceeds were paid to him.

On March 17, 1919, through the Italian official channels, the Italian Royal Procura, of Cantanzaro, Italy, paid the proceeds to Garisto's widow who, together with a minor daughter who was residing with her, were the only heirs at law of Domenico Garisto.

On January 14, 1931, one Louis R. Lanza, of Cleveland, Ohio, made application in the probate court of Allen county, Ohio, at Lima, for letters of administration upon the estate of Garisto. It appears that a local bank in Lima had discovered a deposit of $500 made by Garisto in his lifetime, and a safety deposit box, which later was found to contain the ten original postal savings certificates.

Letters of administration were issued to Lanza by the probate court of Allen county, Ohio, and this action was brought by the administrator against the United States of America, asking judgment against the defendant for the aggregate sum of $1,000, with interest on each of the ten certificates.

The plaintiff, in effect, claims that, regardless of the fact that the Government has paid over the postal deposits to the Royal Italian Consular Agent, who, in turn, paid such funds over to Garisto's widow, he is entitled to collect again, inasmuch as the fund was not paid to him, or anyone else, as administrator of Garisto's estate. He claims that section 1283 of the Postal Rules and Regulations required administration of the estate in question under the laws of the State of Ohio; that he, as administrator, was the only party to whom payment could properly be made under the Postal Rules and Regulations; and that payment was made to the wrong party, and did not cancel the defendant's obligation.

### Stipulations.

The following stipulations were entered into by and between the parties to the action:

"1. That on the following dates postal savings certificates in the amounts set forth opposite each date were issued by the Postmaster at Lima, Ohio, to Domenico Garisto, a citizen of Italy who was temporarily residing in the United States:

"December  6, 1915, $100.00
"January  29, 1916,  100.00
"February  19, 1916,  100.00
"March  4, 1916,  100.00
"April  15, 1916,  100.00
"May  5, 1916,  100.00
"June  10, 1916,  100.00
"July  15, 1916,  100.00
"August  19, 1916,  100.00
"October  28, 1916,  100.00

"2. That on October 3, 1917, Domenico Garisto died, leaving Rosa Garisto, a resident of Vallelonga, Italy, his widow, and a daughter Rosa Garisto, who at that time was eight years of age, and who resided with her mother in Vallelonga, Italy.

"3. That on March 29, 1918, N. Cerri, as the Royal Italian Consular Agent at Cleveland, Ohio, filed a claim for $1036.00, being the total deposits made by Domenico Garisto, for which such postal savings certificates were issued, plus the accrued interest thereon, and that the claim of the Consular Agent was supported by receipted bills showing the payment of the funeral expenses of the deceased, photostatic copies of which bills are attached hereto.

"4. That on June 4, 1918, the Third Assistant Postmaster General in a letter to the Postmaster at Lima approved the claim of the Royal Italian Consular Agent for payment.

"5. That on August 1, 1918, duplicate postal savings certificates were issued inasmuch as the Royal Italian Consular Agent did not have the original certificates in his possession and could not find them.

"6. That on August 7, 1918, the duplicate postal savings certificates were properly endorsed by the said Royal Italian Consular Agent and the face value of such certificates, plus the accrued interest, was paid to him as such Consular Agent.

"7. That on August 19, 1918, the Royal Italian Consular Agent transmitted the money paid to him as aforesaid to the Royal Consular General of Italy at Chicago.

"8. That on September 3, 1918, the Royal Consular General of Italy at Chicago transmitted the money and all of the papers pertaining thereto to the Italian Minister of Foreign Affairs.

"9. That on January 7, 1918, the Italian Minister of Foreign Affairs transmitted the fund to the 'Procura Generale' of the Court of Appeal of Cantanzaro (Cantanzaro being the Italian province or subdivision in which the widow and child of Domenico Garisto resided at the time).

"10. That on March 17, 1919, the Royal 'Procura' of Cantanzaro caused the proceeds of the postal savings certificates to be paid to the widow of Domenico Garisto through the Royal 'Procura' of Cantanzaro, Cerri S. Bruno; that at the time of such payment the widow of Domenico Garisto, being illiterate, placed her mark upon a receipt showing the payment of such money; that such receipt was properly witnessed, and that on the same date the said Royal 'Procura' transmitted the report of delivery, together with such receipt of the widow, to the Italian Minister of Foreign Affairs. That such payment to the widow was made in accordance with the laws of Italy.

"11. That some time prior to January 14, 1931, the officials of one of the banks in Lima, Ohio, notified the office of the Royal Italian Consul in Cleveland that the deceased, Domenico Garisto, died leaving a sum in excess of $500.00 on deposit in their institution; that said Italian Consul communicated this information to Louis R. Lanza, and that the application which he filed for the issuance of letters of administration was filed on the basis of this information.

"12. That on or about January 14, 1931, Louis R. Lanza, who in his application stated that he was the attorney for the Royal Italian Consul, made application to the Probate Court of Allen County, Ohio, at Lima, for the issuance of letters of administration to him upon the Estate of Domenico Garisto.

"13. That at the time of making the application the said Louis R. Lanza was in fact the attorney for the Royal Italian Consul, as stated in his application.

"14. That Mr. Lanza in his application stated that the deceased died leaving personal property of the value of approximately $1500.00, and that there were no debts due from the deceased.

"15. That subsequent to his appointment the plaintiff, Louis R. Lanza, as Administrator of said estate, collected or received from one of the banks in Lima a sum in excess of $500.00 which had been deposited by the said Domenico Garisto, and that the amount so collected, less approximately $150.00 which was deducted by the said Administrator under order of the Probate Court of Allen County, Ohio, to be used to defray expenses, fees and other administrative costs, was, by the said Louis R. Lanza, transmitted to the wife of Domenico Garisto in Italy.

"16. That on April 8, 1931, letters of administration of the Estate of Domenico Garisto were issued by the Probate Court of Allen County, Ohio, to Louis R. Lanza, who since such date, and at the present time, is the duly qualified and acting Administrator of the said estate.

"17. That there are in fact at the present time no debts due from the deceased or chargeable against his estate except the court costs and such attorneys' and/or administrator's fees and costs as may be allowed by the Probate Court of Allen County, Ohio.

"18. That at the time all of the deposits hereinbefore referred to were made by Domenico Garisto, and at the time the proceeds of such deposits were paid to the Italian Consular Agent, there was in full force and effect Section 1283 of the Postal Laws and Regulations of 1913, as amended. Such section is hereto attached and marked 'Exhibit A.'

"19. That attached hereto are photostatic copies of the duplicate postal savings certificates, issued in lieu of the original certificates issued to Domenico

Garisto, and that the endorsement on the reverse side of such duplicate postal savings certificates were made by N. Cerri, who at all times herein mentioned was the Royal Italian Consular Agent stationed at Cleveland.

"20. That the attached photostatic copy of Form P.S. 112 issued by the Post Office Department is a true photostatic copy of the application of the Consular Agent in payment of the balance remaining to the credit of the deceased, Domenico Garisto; that the signature appearing thereon is the signature of N. Cerri, the Royal Consular Agent of Italy, and that on the reverse side of such Form P.S. 112 there appears the notation of the approval of the proper postal officials, by the terms of which the Postmaster at Lima, Ohio, was authorized to make the payment to the said Italian Consular Agent.

"21. That the Treaty of 1853 between the United States and Argentina is as set forth in 10 Stat. 1005, 1009.

"22. That the Treaty of 1856 between Persia and the United States is as found in 11 Stat. 709, 711.

"23. That the Treaty of 1878 between the United States and Italy is as found in 20 Stat. 725, 732.

"24. That the 1910-1911 Treaty between the United States and Sweden is as found in 37 Stat. 1479, 1487.

"25. That all of the foregoing treaties were in full force and effect at the time the application for the payment of the postal funds was made by N. Cerri as the Royal Italian Consular Agent and at the time the proceeds of such funds were paid over to him.

"26. That prior to the appointment of the plaintiff, Louis R. Lanza, as Administrator of the Estate of Domenico Garisto, there had been no application or no appointment of any other individual or corporation as executor or administrator of the estate of said deceased, and there had been no administration of said estate under the laws of Ohio.

"27. The parties waive the right to introduce further testimony in connection with this case and consent that it may be considered submitted upon this stipulation and the evidence hereto attached.

"28. The parties hereby waive their right to submit this case to a jury and consent that it may be heard and submitted to the Court.

"Dated at Toledo, Ohio, this 20th day of December, 1937.

"Frazier Reams,
"Attorney for Plaintiff.
"Gerald P. Openlander,
"Assistant United States Attorney."

Exhibit A Attached to Stipulations.

Section 1283 of the Postal Rules and Regulations, in effect at the time of Garisto's application to open an account, and at the time of his decease, was as follows:

"Sec. 1283. Payment of the amount on deposit to the credit of a deceased, insane, or otherwise legally incompetent depositor must not be made until specific authority therefor has first been obtained from the Third Assistant Postmaster General. After the death of a depositor his account shall not be increased by further deposits.

"2. Administration will be required in settling the account of a deceased depositor when the amount on deposit exceeds $250, except when administration is not required under the laws of the domicile of the decedent. In case administration has been granted on the estate of a deceased depositor, or the depositor has been adjudged mentally or legally incompetent to handle his own affairs, the postmaster shall obtain from the executor, administrator, or other legal representative, and forward to the Third Assistant Postmaster General, Division of Postal Savings, the original or a certified copy of an order of a court of competent jurisdiction showing that the person demanding payment has qualified as such executor, administrator, or other legal representative. If proper authority is shown the Third Assistant Postmaster General will then authorize the postmaster to pay such legal representative the amount standing to the credit of the depositor, together with all interest payable thereon, upon indorsement of the certificates as provided by paragraph 9 of this section.

"3. When the appointment of the legal representative has been in force for a period exceeding one year, the legal representative shall be required to obtain an additional certification from the clerk of the court, or other proper official, showing that his appointment still remains in full force and effect.

"4. In case of the death of a depositor intestate and the amount on deposit is small ($250 or less, except where the laws

of the domicile of the decedent provide otherwise), the postmaster shall obtain an application for payment on Form PS 114 from one of the next of kin or the person who paid the funeral expenses, duly acknowledged before an officer authorized to administer oaths. This form must be executed in accordance with the instructions printed on the last page and forwarded with the receipted bills for the funeral expenses to the Third Assistant Postmaster General, who, if the application is approved, may authorize payment of the amount standing to the depositor's credit, with all interest payable thereon, to the person or persons entitled to receive it under the laws of the state of the domicile of the decedent, upon indorsement of the certificates as provided by paragraph 9 of this section.

"5. If the funeral expenses and other preferred claims have not been paid and no exemptions are created by the state laws, the postmaster shall obtain an application for payment on Form PS 115 from the undertaker who buried the depositor, or from the other preferred creditor or creditors. This application, accompanied by a certification on Form PS 115a as to the correctness of the claim, shall be forwarded to the Third Assistant Postmaster General, Division of Postal Savings, who may authorize payment to the proper person.

"6. In the event of the death intestate of a depositor residing in the United States who is survived by alien heirs residing abroad entitled to the amount on deposit or a portion thereof, the postmaster shall obtain an application for payment on Form PS 112 from the consular officer having jurisdiction in the case. This application shall be forwarded to the Third Assistant Postmaster General, Division of Postal Savings, accompanied by the receipted bills for the funeral expenses or an application from the undertaker as provided by paragraph 5, and payment to the proper person may be authorized.

"7. In the case of the death intestate of any depositor while residing abroad, special instructions will be issued upon application to the Third Assistant Postmaster General, Division of Postal Savings.

"8. When a depositor dies and is buried abroad; is lost at sea; perishes in some catastrophe that makes interment impossible; or is buried by the United States

Government, a statement to that effect should be made in the application for payment, in which event the requirements as to the funeral expenses will be waived.

"9. Before making payment the postmaster shall obtain the indorsement of the payee to each of the postal-savings certificates in the following form: John Doe, by Richard Roe, (executor, widower, guardian, or other proper title). When interest is due on a certificate, a receipt shall be taken from the payee on the back of the certificate, in lieu of the indorsement, in the following form: 'Received the amount of this certificate and $——— (specify amount) interest due thereon.'

"10. After payment has been made, a memorandum shall be affixed to the certificates stating that payment was made 'in accordance with authority contained in the letter from the Third Assistant Postmaster General dated * * *' The certificates shall then be treated as paid and forwarded by the postmaster with his next monthly account current.

"11. Application forms for the use of the next of kin, undertaker, preferred creditor, or consul, may be obtained from the Third Assistant Postmaster General, Division of Postal Savings. In reporting the death of a depositor or in requesting these forms, the postmaster shall state the name of the depositor and the amount on deposit and any other information that may assist in the settlement of the account.

"12. A depositor may not designate a beneficiary to receive payment except through the formality of a will, nor will powers of attorney, waivers, assignments, or release be accepted in the settlement of an account. Payment must be made direct to the person or persons to whom authorized. Whenever funds are to be remitted by mail a money order, less the usual fee, shall be used.

"(b) Change in Name of Depositor.

"13. A woman who opens an account and afterwards marries should present her postal savings certificates to the postmaster, who shall note on the face of each certificate the new name of the depositor and affix his signature. The depositor shall be required to sign her new name on the application. Until the depositor presents her certificates for proper notation the postmaster if aware of her marriage shall receive no further deposits on her account

nor make any partial or interest payments to her, but he may make full payment to close her account on being satisfied as to her identity.

"14. In the event of the change of a depositor's name by the order or decree of a court of competent jurisdiction the procedure set forth in the next preceding paragraph shall be followed."

### Opinion.

It is plaintiff's contention that the provisions of subsections 2 and 3, requiring administration of an estate before payment of postal certificates, are applicable to subsection 6 of these Rules and Regulations, and that the laws of Ohio at that time required the administration of all estates in excess of the sum of $100.

Article 6 of the Constitution of the United States, paragraph 2, reads as follows: "This Constitution, and the Laws of the United States which shall be made in Pursuance thereof; and all Treaties made, or which shall be made, under the Authority of the United States, shall be the supreme Law of the Land; and the Judges in every State shall be bound thereby, any Thing in the Constitution or Laws of any State to the Contrary notwithstanding."

The case of Santovincenzo v. James F. Egan, 284 U.S. 30, 52 S.Ct. 81, 76 L. Ed. 151, paragraphs 4 and 5 of the Syllabus, read as follows:

"4. An agreement between the United States and a foreign country with respect to the rights and privileges of citizens of the United States in such country, and of the nationals of such country within the United States, and the disposition of the property of aliens dying within the territory of the respective parties, is within the scope of the treaty-making power."

"5. Any conflicting law of a state must yield to provisions of a treaty within the scope of the treaty-making power."

Article 17 of the Treaty entered into between the United States Government and Italy (20 Stat. 725, 732, May 8, 1878) reads as follows: "The respective Consuls General, Consuls, Vice-Consuls and Consular Agents, as likewise the Consular Chancellors, Secretaries, Clerks or Attaches, shall enjoy in both countries, all the rights, prerogatives, immunities and privileges which are or may hereafter

be granted to the officers of the same grade, of the most favoured nation."

Article 6 of the Treaty between the United States and Persia, 11 Stat. 709, 711, entered into on December 13, 1856, and, in effect, prior to and at the time of the death of Garisto, reads, in part, as follows: "In case of a citizen or subject of either of the contracting parties dying within the territories of the other, his effects shall be delivered up integrally to the family or partners in business of the deceased; and in case he has no relations or partners, his effects in either country shall be delivered up to the consul or agent of the nation of which the deceased was a subject or citizen, so that he may dispose of them in accordance with the laws of his country."

At Garisto's death he left surviving him no partners in business, no family in this country, no relations in this country, and his only surviving heirs at law subjects of and residing in Italy.

Under the most favored nation clause (article 17 of the Italian Treaty, hereinbefore quoted), article 6 of the Persian Treaty would become applicable, and would govern the disposition of the estate of Garisto.

The subsections of section 1283 of the Postal Rules and Regulations are not to be read in pari materia. Subsection 6 is independent of the provisions of subsection 2. It is designed specifically to meet the very conditions that arose in connection with the estate of Domenico Garisto. Form P.S. 112, which subsection 6 provides shall be filed by way of application when pertinent, contains the following certification, which was executed by N. Cerri when he applied for the payment of these savings certificates: "and I further certify that administration of the estate of the depositor has not been granted and will not be asked for or granted to the best of my knowledge and belief; that the funeral expenses have been paid, and no claim is made for reimbursement; that there are no debts due to persons residing in the United States; and that the depositor left surviving a widow Rosa Pileggi Garisto, of Vallelonga, Italy, and the following next of kin: Rosa Garisto, eight years, daughter."

If the provisions of subsection 2, requiring administration, as specified under the laws of the domicile of the decedent,

were designed to govern and control subsection 6, which calls for the execution of application Form P.S. 112, then certainly the foregoing certification by the applicant would have constituted pure surplusage.

In the opinion of the court the proceeds of these postal savings certificates were properly paid by the Postmaster General to the Royal Italian Consular Agent for payment to the heirs of Garisto "in accordance with the laws of his country," and if such payment had not been made when duly applied for by the Royal Italian Consular Agent then the Postmaster General could have been compelled to make payment by proper action instituted by the Royal Italian Agent.

Petition dismissed.