In the Matter of the Estate of Michael Blasi, Also Known as Michael Blazo, Deceased.

Surrogate's Court, Kings County, November 22, 1939.

*Thomas J. Snee*, for William V. Elliott, public administrator of Kings county, as administrator, etc., petitioner.

*Hardin, Hess & Eder*, for the Royal Consul General of Italy at New York, attorney-in-fact for Rocco Antonio Blasi, sole distributee.

*Miles F. McDonald,* special guardian for unknown distributees.

*John J. Bennett, Jr., Attorney-General [Robert P. Beyer, Assistant Attorney-General,* of counsel], *amicus curiæ.*

WINGATE, S. This proceeding involves a decision as to the propriety of payment to an Italian national, or to the Royal Consul General of Italy, on his behalf, of the distributive avails of the estate of this decedent.

It has been demonstrated to the satisfaction of the court that the sole distributee of this intestate estate is Rocco Antonio Blasi, residing at Laurenzano, Italy. The Italian Consul has appeared in the proceeding claiming to represent him, and has asserted a right to receive payment of the net estate, amounting to approximately $7,500. The Attorney-General of the State of New York has intervened, and contends that the distributable sum should be deposited in the city treasury, presumably pursuant to the provisions of section 269 of the Surrogate's Court Act.

In *Matter of Weidberg* (172 Misc. 524) this court had occasion to consider the propriety of payment to the German Consul General, or his attorneys, of distributive shares of German nationals of Jewish race who had made good their escape from Germany and were now residing in Palestine, Belgium and Denmark, concluding that under the treaty with Germany there was no obligation for payment to the German Consul of these shares, and that the composite situation was such as to bring into operation the provisions of section 269 of the Surrogate's Court Act, obligating the court to direct initial payment to the city treasurer, since it appeared that the " distributee * * * would not have the benefit or use or control of the money * * * due him."

This conclusion was obviously predicated upon three premises, namely, *first,* that there was no controlling law which compelled payment to the Consul; *second,* that there were reasonable grounds for belief that if paid, the distributees would not have the benefit of the money; and, *third,* that an obligation was imposed upon the court by the 1939 amendment to section 269 of the Surrogate's Court Act to direct deposit with the city treasurer in situations in which an affirmative factual finding was attained that the distributees would not have the benefit of the money. Each of these premises is indispensable to the attainment of a similar result, and their presence or absence in the case at bar is, therefore, necessary of evaluation.

The treaty presently in force between the United States and Italy was ratified by the parties in June and July, 1878, and proclaimed on September twenty-seventh of that year. It contains no

express enumeration of the powers of Consuls, but does provide in article XVII as follows: " The respective Consuls General, Consuls, Vice Consuls and Consular Agents, as likewise the Consular Chancellors, Secretaries, clerks or attaches, shall enjoy in both countries, all the rights, prerogatives, immunities and privileges which are or may hereafter be granted to the officers of the same grade, of the most favored nation." This treaty is still in effect.

An examination of existing treaties between the United States and other countries indicates that, for present purposes, none is more favorable than that with Germany, which was applied in the *Weidberg* case; indeed, article XXV of the German treaty appears to be a substantially standard form, being found in identical, or substantially similar language in the treaties with Cuba, El Salvador, Estonia, Finland, Honduras, Hungary, Latvia, Norway and Poland. This reads " A consular officer of either High Contracting Party may in behalf of his non-resident countrymen receipt for their distributive shares derived from estates in process of probate or accruing under the provisions of so-called Workmen's Compensation Laws or other like statutes provided he remit any funds so received through the appropriate agencies of his Government to the proper distributees, and provided further that he furnish to the authority or agency making distribution through him reasonable evidence of such remission."

No intimation has been made in the present case, and there is nothing of which the court may take judicial notice, to indicate that if the net distributable assets of this estate were paid to the Italian Consul, pursuant to his authority of receipt, the sum would not be capable of transmission, and, in fact, be remitted to the distributee in Italy. This destroys at a stroke the first two premises upon which the *Weidberg* decision was predicated and renders section 269 of the Surrogate's Court Act inapplicable.

The memoranda of the Attorney-General in this and similar cases involving Italian nationals, however, urges that " there is no existing treaty between the United States and the Kingdom of Italy providing for a reciprocal payment of distributive shares of decedents' estates and withdrawal of the same from the country of administrative jurisdiction of currency. * * * Under the circumstances, * * * no decree should be made directing payment to any person residing in Italy until satisfactory arrangements have been made between the American and Italian Governments covering withdrawal of funds by the Nationals of each from the domain of the other."

Reduced to lowest terms, this position would appear to amount to an assertion that the present treaty was ineptly drawn and

should be revised to afford greater protection to American nationals This argument, if sound, should be addressed to the State Department in Washington, since the authority for making or amending treaties is, by the United States Constitution (Art. 6, § 2), vested solely in the Federal government. When once made, a treaty is the supreme law of the land (*Hauenstein* v. *Lynham*, 100 U. S. 483, 489; *Geofroy* v. *Riggs*, 133 id. 258, 266; *Missouri* v. *Holland*, 252 id. 416, 434; *Sullivan* v. *Kidd*, 254 id. 433, 440; *Asakur* v. *Seattle*, 265 id. 332, 343; *Todok* v. *Union State Bank*, 281 id. 449, 453), which this and every other court is under obligation to effectuate, and in respect of which no authority for variation or modification exists by any judicial tribunal.

Whereas no proper part of the decision of this controversy, it may not be amiss to quote, for the information of interested parties, from a letter addressed to the Attorney-General by the Italian Royal Consul General, a copy of which was transmitted to this court. This reads in part: " I am pleased to inform you that the Italian Embassy in Washington has received a reply from the Italian Foreign Office to the effect that the Italian Government will henceforth allow the transmission to the United States of distributive shares of Italian estates to which American citizens are entitled. The procedure for the withdrawals will of necessity entail a delay of several weeks inasmuch as to take advantage of this exceptional concession, which is made to American citizens only, a separate application will have to be filed in each case with this Consulate General which will transmit same through the usual channels."

Since no legal justification is apparent for a denial of distribution of the assets here involved to the Italian national who has been determined to be entitled thereto, and pursuant to the terms of the treaty between the United States and Italy, the Italian Consul is entitled to receive these funds for transmission, the adoption of this course will be directed.

Enter decree on notice in conformity herewith.