Argued February 3, reversed July 27, 1966

In re Estate of
JOHN  WILHELM  HOLMLUND, Deceased
MENTULA *v.* STATE  LAND  BOARD
417 P. 2d 581

*Joseph D. St. Martin,* Portland, argued the cause and filed briefs for appellant.

*Walter L. Barrie,* Assistant Attorney General, Salem, argued the cause for respondent. With him on the briefs was Robert Y. Thornton, Attorney General, Salem.

Before McAllister, Chief Justice, and Sloan, Goodwin, Holman and Schwab, Justices.

SLOAN, J.

This is the second contest between these parties as to who has the legal right to claim the proceeds of the estate of John Holmlund, deceased. See *Kankkonen v. Hendrickson et al,* 1962, 232 Or 49, 379 P2d 393, 99 ALR2d 296. In the previous appeal, we held that John Holmlund's mother, Johanna Holmlund, was presumed to be still living and that she was John's sole heir. In the instant proceeding the Consul General of Finland petitioned the probate court to have the proceeds of the estate distributed to him as the legal representative of his "absent country-woman," Johanna. He claims that a treaty between Finland and the United States authorizes him to collect and receipt for Johanna. The state demurred to the petition on the ground that it did not state facts to support the order requested. The probate court referred the proceedings to the circuit court for decision. The circuit court decided that the treaty did not grant the authority claimed by the Consul General and sustained the state's demurrer. The Consul appeals.

The petition alleged the facts relative to the present undetermined status of this estate. It then alleged:

"* * * * *

"II

"That the petitioner, by the law of nations and by the Treaty of Friendship and Commerce between the United States and the Republic of Finland, is constituted the attorney in fact of his absent nationals, who are otherwise unrepresented, to maintain the rights of such absent, unrepresented countrymen, and in particular, on their behalf, to demand and sue, to receive their property, and acquit and release, and to do everything necessary to defend and protect their interests.

"* * * * *"

The pertinent provisions of the Treaty of Friendship, Commerce and Consular Rights between the United States and the Republic of Finland (49 Stat 2659) are:

## "Article XIX

"\* \* \* \* \*

"Consular officers of each of the High Contracting Parties shall, after entering upon their duties, enjoy reciprocally in the territory of the other all the rights, privileges, exemptions and immunities which are enjoyed by officers of the same grade of the most favored nation. \* \* \*." 49 Stat 2672, 2673.

## "Article XXIII

"Consular officers, nationals of the State by which they are appointed, may, within their respective consular districts, address the authorities, National, State, Provincial or Municipal, for the purpose of protecting their countrymen in the enjoyment of their rights accruing by treaty or otherwise. Complaint may be made for the infraction of those rights. \* \* \*." 49 Stat 2676.

## "Article XXIX

"A consular officer of either High Contracting Party may in behalf of his non-resident countrymen, and without being required to produce his authorization, collect and receipt for their distributive shares derived from estates in process of probate or accruing under the provisions of so-called Workmen's Compensation Laws or other like statutes provided he remit any funds so received through the appropriate agencies of his Government to the proper distributees, and provided further that he furnish to the authority or agency making distribution through him reasonable evidence of such remission." 49 Stat 2681.

The state reads Article XXIX to mean that the Consul may not collect and receipt because he did not allege that he can remit the funds to Johanna. It contends that this is conclusive and, since it was not alleged that the funds will reach Johanna, the Consul cannot collect and receipt for her. The Consul, to the contrary, says that the most favored nation treatment granted in Article XIX expands his authority to take. This is so, he argues, because the United States has treaties with other nations which permit a consular representative to collect and receipt without the necessity of proof of delivery to the person represented by the Consul. The trial court held that the specific language of Article XXIX was not expanded by the most favored nation provision of Article XIX.

Despite centuries of use in many forms of treaties there is a dearth of authority on the meaning and purpose of the most favored nation clause. It is held that "This clause means that each signatory grants to the other the broadest rights and privileges which it accords to any other nation in the treaties it has made or will make." *Kolovrat v. Oregon,* 1961, 366 US 187, 193, 81 S Ct 922, 6 L Ed2d 218; *Ljubich v. Western Cooperage Co.,* 1919, 93 Or 633, 637, 184 P 551. This tells us that we may look to treaties executed both before and after the treaty with Finland was proclaimed. It does not aid in deciding whether or not the grant of additional general authority to a Consular officer by the most favored nation clause includes the specific authority asserted here. No one would dispute that the most favored nation clause does enhance the authority of a Consul to perform his more normal commercial functions, but does the general grant of most favored nation treatment expand the Consul General's

specific grant of authority to collect and receipt for his absent countryman in addition to the restricted authority stated in Article XXIX of this particular treaty? We think it does.

In reaching this decision we rely primarily on four decisions: *Santovincenzo v. Egan,* 1931, 284 US 30, 52 S Ct 81, 76 L Ed 151; *Ljubich v. Western Cooperage Co., supra,* 93 Or 637; *Lanza v. United States,* 1938. (DCND Ohio) 22 F Supp 716, and *In re Blasi's Estate* (Surr Ct 1939) 172 Misc 587, 15 NYS2d 682. In each of these cases the court held that the most favored nation clause included within a treaty's grant of general consular authority does enlarge the authority of the Consular officer to act for and take proceeds of estates for his absent countrymen. The most authoritative and persuasive of these is *Santovincenzo.*

█ In that case a native and citizen of Italy died intestate in New York. His estate was administered. No heirs or next of kin were found. The Consul General of Italy claimed the net proceeds of the estate for transmission to his government. He relied on the treaty between Italy and the United States, which included within the general authority of the respective consuls, a most favored nation clause similar to that in the instant treaty with Finland. The Italian Consul General then asserted the right to claim under more favorable grants of consular authority contained in a treaty between the United States and Persia of 1856 (11 Stat 709, 710). The latter treaty authorized the Consuls of the two countries to take the effects of a deceased citizen of either country, dying resident in the other country, and "* * * dispose of them in accordance with the laws of his country." The New York courts refused to recognize this authority and

escheated the property to the City of New York. The United States Supreme Court, in an opinion by Mr. Chief Justice Hughes, after analyzing the purpose and intent of the treaties, held that the Italian Consul General was entitled to exercise the authority expressed in the Persian Treaty and allowed him to take the proceeds of the estate. Chief Justice Hughes' discussion of the interpretation of the most favored nation clause and of its purpose and intent is appropriate to the instant case. It is a most compelling holding that the general grant of authority to Consular officers coupled with a most favored nation clause does include the Consular officer's right to collect and receipt for the proceeds of an estate for his countryman.

In *Ljubich v. Western Cooperage Co., supra* this court was presented with the claim of the Consul General of Austria-Hungary to bring an action for the wrongful death of a citizen of that country in an industrial accident in Oregon. He brought the action in behalf of the man's probable existing widow who was a resident of Austria-Hungary. The action was brought during World War I when communication with the widow was impossible so that no actual authority to bring the action could be obtained. The Austria-Hungary Consul General relied on the most favored nation provision of a treaty between the United States and that nation. This court, by Mr. Chief Justice McBRIDE, also analyzed the purpose and intent of the treaty and of the most favored nation clause. The court applied consular authority contained in a treaty between the United States and Germany. The court concluded that the German treaty "* * * became a part of the treaty with Austria-Hungary and, in our opinion, conferred full authority upon the Consul General, to commence this action in the name

of the plaintiff, and in her name and for her to prosecute it to a conclusion and receive the proceeds if the plaintiff should recover judgment." 93 Or at 641. Although the statement that the Consul General had the right to "receive the proceeds" of any judgment was dictum in that the issue was not involved, it carries weight as an interpretation that the right of representation must be an effective one or it is otherwise meaningless. The case is also authoritative as a precedent of this court that the most favored nation clause does enlarge the Consular General's authority to act for his countryman in the case at issue.

*Lanza v. United States, supra,* 22 F Supp 716, involved the same treaty between the United States and Italy that was interpreted in *Santovincenzo.* (20 Stat 725). In *Lanza,* an Italian citizen had died resident of Ohio. At his death he was the owner of several postal savings certificates. The Post Office Department paid the proceeds of these certificates to the Italian Consul General without the intervention of any probate proceedings. Later, an administrator was appointed for the deceased Italian's estate and the administrator brought the reported action against the United States for wrongful payment of the certificates. It was contended by the administrator that postal regulations and the laws of Ohio required that the proceeds of these certificate could only be paid to an administrator.

The court applied the same treaty with Persia that was involved in *Santovincenzo.* The court held that the laws of the state must yield to the treaty requirements and that the Postmaster-General could have been compelled to make payment of the certificates to the Italian Consul General in an action brought

for that purpose. The court stated that the most favored nation clause in the general grant of consular authority allowed the Italian Consul to avail himself of the rights afforded by the treaty with Persia and have the proceeds of the estate delivered to him for disposition in accordance with the laws of Italy.

*In re Blasi's Estate, supra,* 15 NYS2d 682, was again a case concerning a citizen of Italy who died resident in New York. The Italian Consul General claimed the proceeds of the estate for the benefit of a known heir in Italy. The court in applying the most favored nation clause of the same treaty mentioned above relied on a treaty between the United States and Germany. That treaty contained language like that in the instant case requiring evidence of the ability to remit. The question of the right to remit was not mentioned in the Surrogate Court's opinion. However, that case like the other cases cited is a clear holding that the right to receive the distributive share of his countryman is a right encompassed within the grant of authority to Consular Officers and that the clause in such a general grant is applicable to the right to receive such a distributive share.

■ This we think is the concept, express or readily implied in the cases we have cited. That is, that the general grant of authority of the most favored nation clause does apply to and can expand the specific power of the Consul General to represent his absent countrymen in protecting the latter's right to claim and receive the proceeds of an estate of a national of his country who dies in this state. And, that the right to represent is a full power to do that which the absent countryman could do if present.

■ Having reached that conclusion it is necessary

to look to the treaties relied on by the Finnish Consul General to see if they do give him more authority than that contained in Article XXIX. The Consul General cites treaties between the United States and Belgium of March 9, 1880, 21 Stat 776, and with Great Britain of March 2, 1899, 31 Stat 1939, and with Serbia of December 27, 1882, 22 Stat 968. These three treaties contain substantially this provision: "To appear personally or by delegate, in all proceedings on behalf of the absent or minor heirs, or creditors, until they are duly represented." None of these treaties contain the limiting language of Article XXIX relative to the ability to remit. The state argues that the right to appear is not the same as the right to receive proceeds. We think the right to appear means the right to effectively represent.

The New York Court of Appeals has had occasion to express an opinion on the meaning of the word "appear" in interpreting a treaty between the United States and Poland of June 15, 1931, 48 Stat 1507, 1530. This treaty gave the Consular Officers of either High Contracting Party the right to appear in behalf of his non-resident nationals in all matters involving the estates of deceased persons with the same effect as though he had a power of attorney. *Re Zalewski*, 1944, 292 NY 332, 55 NE2d 184, 157 ALR 87. The New York court said that the word "appear" meant the right to full representation. It was held to have included the right of the Polish Consul General, in behalf of a widow residing in Poland and without any communication or authorization from her, to elect to take against her husband's will filed for probate in New York.

■ The Consul General also relies on Article XXIV

of a treaty between the United States and Norway of June 5, 1928, 47 Stat 2155 which reads:

"A consular officer of either High Contracting Party may in behalf of his non-resident countrymen collect and receipt for their distributive shares derived from estates in process of probate or accruing under the provisions of so-called Workmen's Compensation Laws or other like statutes, for transmission through channels prescribed by his Government to the proper distributees."

We interpret this provision as not containing the limitation found in Article XXIX of the Finnish Treaty. It appears that the Norwegian Treaty would permit distribution according to the laws of the country receiving the transmission of funds similar to that found in the Treaty with Persia considered in the cases we have cited. The Treaty with Persia is, of course, no longer in existence.

█ It appears to us, therefore, that under other treaties to which the United States is signatory the foreign Consular official has the right to receive upon behalf of his countryman the proceeds of an estate in this country without showing the ability to remit and that this right was granted to Finnish consular officials by the most favored nation clause in Article XIX of the treaty between the United States and Finland.

The state argues, however, that there is no evidence that a United States Consul in Finland would enjoy the same reciprocal rights as claimed for the Consul General here. We assume that the state means that this has not been specifically plead and, therefore, not admitted by the demurrer. Assuming that reciprocity was necessary, 2 Hyde, International Law, (1945 2nd Rev. Ed) § 482, at pages 1355-56, we think

it was alleged in effect. The petition alleged that the Consul General, by virtue of the treaty, had every authority to represent and to collect and receipt for his absent countrywoman. This, we think, means that the Consul General can or has met every requirement imposed by the treaty, including reciprocity. If the state had answered to the petition by denial, instead of by demurrer, the allegations of the petition would have been sufficient to have enabled the Consul General to introduce evidence to prove reciprocity. In addition, *Santovincenzo v. Eggan, supra,* 284 US at page 36, states that "It may be assumed that [the most favored nation provisions] of the Consular Convention with Italy contemplates reciprocity with respect to the rights and privileges sought, and there is no suggestion that Italy has not recognized the right of Consuls of the United States to take the effects of the citizens of the United States dying in Italy in circumstances similar to those in which the present claim of the Italian Consul General is pressed." There is nothing in the opinion to indicate what matter in the pleadings or evidence in the case prompted the quoted statement. Obviously, the statement was not included in this well-reasoned opinion as a generality. Later, Id., at page 38, in discussing the reciprocal rights of citizens of the United States and of Persia relating to the treaty between those two countries, the opinion stated that "It would be wholly inadmissible to conclude that it was the intention that citizens of the United States, making their residence in Persia under this Treaty, would be denied the benefit of article III in case they acquired a domicile in Persia."

Although, not directed at the specific question of pleading reciprocity we think that the total meaning of the *Santovincenzo* opinion can be taken to sustain

a holding that lack of reciprocity would be a defense that must be affirmatively plead and proven. It would be difficult to square a contrary holding with the rules of treaty interpretation discussed in the cases cited.

It follows that the judgment of the trial court must be reversed.