negligence of defendant. Subsequently to the joining of issue herein, another action, in which plaintiff sues as guardian ad litem of his said son for damages arising from the same cause of action, has been brought to trial, and judgment rendered for defendant. This judgment the defendant desires to set up in his supplemental answer. While it is true that in general the proposed supplemental pleading is not passed upon on a motion for leave to serve it, if the motion is timely made, and made in good faith, still, if the proposed defense is manifestly frivolous or immaterial, the court is justified in denying the motion. See Williams v. Hays (Sup.) 5 N. Y. Supp. 667. In the case before me, it seems to me that the proposed defense is absolutely inadmissible, inasmuch as the parties are not the same in this case as in the other case, in which the judgment was obtained. It is true that the causes of action arise from the same injury, but that is not sufficient to make the judgment obtained in that action a defense in the case at bar. Furlong v. Banta, 80 Hun, 248, 29 N. Y. Supp. 985. In the first action the plaintiff sues as guardian ad litem for his son, while in the present case he sues individually. A former judgment concludes the party only in the character in which he sues, and a judgment for or against him as guardian ad litem does not necessarily preclude him, in an action affecting him personally, from disputing the findings or judgment, although the same questions are involved. See Collins v. Hydorn, 135 N. Y. 320, 32 N. E. 69; Furlong v. Banta, 80 Hun, 248, 29 N. Y. Supp. 985. The mere fact that the same persons are litigants in the two actions is not sufficient always to satisfy the rule of res adjudicata, for the same person may in law be considered another person, and consequently another party, by suing in another capacity. Collins v. Hydorn, supra. It therefore seems to me that this motion must be denied, on the ground that the proposed defense is immaterial and frivolous. Motion denied, with $10 costs.

---

(12 Misc. Rep. 245.)

### In re TARTAGLIO'S ESTATE.

(Surrogate's Court, Westchester County. April, 1895.)

CONSULS—AUTHORITY—COLLECTING MONEY FOR COUNTRYMAN.
    A consul of a foreign country in the United States has authority to receive the distributive shares to which persons residing in his country are entitled from the estate of a person dying in the United States.

Application by the Italian consul general to compel the payment to him of the distributive shares of the widow and minor children of Libretto Tartaglio, deceased. Granted.

D. Humphreys and C. H. Ostrander, for petitioner.
Wilson Brown, Jr., for county treasurer.

SILKMAN, S. Application is made by the consul general of Italy at New York to have paid to him the distributive shares of

the widow and five minor children in the estate of Libretto Tartaglio, an Italian subject, who died leaving personal property which has been administered in this county, and which distributive shares have been deposited with the county treasurer pursuant to a decree of this court. The widow and children are residents and subjects of the kingdom of Italy. The county treasurer opposes the application upon the ground that the consul general has no authority to receive such distributive shares, and give such an acquittance as will relieve him from responsibility. The rights of subjects of foreign countries, both as to their persons and property, largely depend upon treaty provisions. The treaty between the United States and the kingdom of Italy provides that consuls general "may have recourse to the authorities of the respective countries within their respective districts, whether federal or local, judicial or executive, in order to defend the rights and interests of their countrymen." The term "defend," as used, is to be given the broadest meaning, and includes the power to maintain affirmatively the rights of the consul's countrymen, and our local as well as federal judiciary must, in obedience to the treaty, recognize such rights. But, in the absence of such treaty provision, a foreign consul would have much the same power. We find the rule laid down in Kent: "The practice of our courts is that a foreign consul may assert and defend as complainant party the rights and property of a person of his nation." The consul of a foreign nation recognized by the United States is competent to defend and watch over the interests of persons of his nation, and may bring suits for such purpose without any special authority from the parties in interest. The Bello Corrunes, 6 Wheat. 168. The court says, in the case cited, "that a vice consul, duly recognized by our government, is a competent party to assert or defend the rights of property of the individuals of his nation in any court having jurisdiction of causes affected by the application of international law. To watch over the rights and interests of their subjects wherever the pursuits of commerce may draw them or the vicissitudes of human affairs may force them is the great object for which consuls are deputed by their sovereigns, and, in a country where laws govern and justice is sought for in courts only, it would be a mockery to preclude them from the only avenue through which their course lies to the end of their mission. The long and universal usage of the courts of the United States has sanctioned the exercise of this right, and it is impossible that any evil or inconvenience can flow from it." Foreign consuls have authority and power to administer on the estates of their fellow subjects deceased within their territorial consulate. Wheat. Int. Law (2d Eng. Ed.) 151; Wools. Int. Law, § 96. The right to demand and sue for necessarily implies the authority to acquit and release. In case of a debt due by a resident of this state to the widow and children of Libretto Tartaglio, there would seem to be no doubt not only of the consul's power, but his duty, under the authorities, to demand and collect it, and, if so, I can see no reason in principle that would prevent his demanding and receiving moneys or prop-

erty deposited in court belonging to a subject of such consul's country. Neither can I see that the infancy of some of the parties affects or limits the right or power of the consul. The question as to what disposition may be made of the property after the consul has received and exported it is something with which our courts have nothing to do; that is to be settled by the laws or authority of the government to which the foreign subject owes allegiance. An order will be made directing the county treasurer to pay the distributive shares of the widow and children of Libretto Tartaglio in his estate, deposited with said county treasurer pursuant to the decree of this court, to the consul general of Italy at New York, upon his executing and delivering a proper receipt therefor. Ordered accordingly.

(12 Misc. Rep. 613.)

## PEOPLE v. MEYER.

(Court of General Sessions of New York County. May, 1895.)

1. HUSBAND AND WIFE—FAILURE TO SUPPORT WIFE.

    A complaint against a man for failure to support his wife need not be made by the commissioners of charities and correction, but may be made by any person.

2. SAME—WHAT CONSTITUTES OFFENSE.

    Where an agreement for a separation provided that the husband should pay a certain weekly sum for the support of his wife and child, and afterwards he failed to make the payments, he is guilty of neglecting to support his wife and children in the county in which she then resided.

Appeal from court of special sessions.

Louis Meyer was declared a disorderly person in failing to support his wife and child, and appeals. Affirmed.

Benj. Baker, for appellant.

Greenhall & Levy, for appellee.

Nathaniel Levy and Percy McElrath, for commissioners of charities and correction.

GOFF, R. The police justice had jurisdiction to entertain the complaint of the complainant, and to judicially pass upon and determine the question whether the appellant was a disorderly person for failure or neglect to support his wife and child (section 900 of the Criminal Code, and sections 1454 and 1455 of the consolidation act). I find no provision of law requiring the complaint to be made by the commissioners of charities and correction. Any person may make the complaint. The appellant and his wife, while residents of the city of Brooklyn, entered into an agreement—through an intervening trustee—of separation, which provided that the sum of $15 per week should be paid to the wife for the support of herself and child. This was separation, not abandonment; and, so long as the appellant continued to pay the stipulated sum, he did not abandon his wife. Whether the separation took place in the city of Brooklyn or in the city of New York is immaterial. The material