---

(173 App. Div. 517)

### In re McARTHUR.

(Supreme Court, Appellate Division, Third Department. June 30, 1916.)

1. PRINCIPAL AND AGENT ☞97—POWER OF ATTORNEY—CONSTRUCTION.

     While a power of attorney must be strictly construed, it must not be so strictly construed as to destroy its purpose.

     [Ed. Note.—For other cases, see Principal and Agent, Cent. Dig. §§ 344–376; Dec. Dig. ☞97.]

2. PRINCIPAL AND AGENT ☞100(3)—POWERS OF AGENT—MORTGAGING PROPERTY.

     Where the principal gave his wife a practical carte blanche power of attorney to handle, manage, and sell his business and property, she had the power to mortgage it to secure antecedent debts.

     [Ed. Note.—For other cases, see Principal and Agent, Cent. Dig. §§ 265, 345, 364; Dec. Dig. ☞100(3).]

Appeal from Surrogate's Court, Franklin County.

Proceeding in the estate of Clarence A. McArthur, deceased. From an order surcharging the account of Cecil V. McArthur, executrix, with certain moneys, and directing the Smallman & Spencer Company, Incorporated, creditor, to pay such moneys to her, both the executrix and the creditor appeal. Reversed.

Argued before KELLOGG, P. J., and LYON, HOWARD, WOODWARD, and COCHRANE, JJ.

Cantwell & Cantwell, of Malone (John M. Cantwell, of Malone, of counsel), for appellant.

George J. Moore, of Malone, for respondents Farmers' Nat. Bank and others.

Bryant & Lawrence, of Malone, for respondents F. W. Lawrence Co. and others.

HOWARD, J. For considerable time prior to his death, Clarence A. McArthur had conducted an extensive business at McColloms, in

Franklin county, N. Y. The business included a variety of enterprises —a large summer hotel, lumbering operations, the conduct of a farm, and other affairs. For some time prior to August 9, 1913, he had been ill, suffering with a cancer, which ultimately resulted in his death on October 12, 1913. This malady grew upon him to such an extent that it incapacitated him from transacting his affairs, and at last concluding, apparently, that he could no longer manage his own business, he turned it over to his wife, executing, on August 9, 1913, a power of attorney to her which reads as follows:

"I hereby make, constitute, and appoint my wife, Cecil V. McArthur, my true and lawful attorney to act for me and in my name, place, and stead to manage and direct all my business, including my hotel, lumbering, and farming business, and to sign all notes, checks, receipts, and other papers necessary to be signed in the conduct of my business, in my name, and to sell any or all of my personal property for the best prices she can obtain therefor, and to sign good bills of sale thereof, and to collect, sue for, and receive all debts and amounts due me, and generally to transact all my business as fully as I could do, were these presents not made, hereby ratifying and confirming all that my said attorney shall do in my name."

At the time of the execution of this document, McArthur was heavily indebted to various creditors in various amounts. One of his largest creditors was Smallman & Spencer Company; the amount due them aggregating $4,437.68. About the middle of September certain negotiations were had between Halcyon N. Buck, McArthur's bookkeeper, Mrs. McArthur, and the Smallman & Spencer Company, whereby McArthur attempted to sell to Smallman & Spencer Company certain personal property in payment of the debt. The company declined to buy at the prices fixed by McArthur; but finally Mrs. McArthur, acting under the power of attorney, executed a chattel mortgage to them September 20, 1913, for the full amount of the debt. This debt was represented by six promissory notes. The proof shows that Clarence A. McArthur never knew anything about the making and delivery of the chattel mortgage. No fraud is charged, however; the attorney for the objecting creditors stating at the trial that:

"The objecting creditors in this proceeding do not claim any fraud or undue influence was exercised on the part of Smallman & Spencer Company."

McArthur died October 12, 1913. He left a will, naming his wife as executrix, and she duly qualified. In the inventory of the property of the deceased, made and filed by the appraisers, there is a list of items headed:

"The following schedule D subject to chattel mortgage held by Smallman & Spencer Company for $4,437.68."

The executrix proceeded to sell all the personal property of the deceased, and through some arrangement with Smallman & Spencer Company the property covered by their chattel mortgage was about to be sold at the same time. An injunction was procured by certain other creditors, restraining the executrix from selling the property covered by the mortgage; but the injunction was afterwards vacated upon a stipulation which provided that the sale might proceed without prejudice to the rights of the other creditors to contest the validity of the

chattel mortgage. The mortgaged chattels sold for $4,100.33. This amount was paid over to Smallman & Spencer Company. Objection to this payment was made by the other creditors, which objection has finally resulted in a decree of the surrogate surcharging the executrix with $4,100.33, and directing that Smallman & Spencer Company pay that amount back to the estate.

[1, 2] The principal question for consideration here is as to the validity of the chattel mortgage. It is a general rule of law that a power of attorney must be strictly construed. No case, however, goes to the extent of holding that such an instrument should be so strictly construed as to destroy its purpose. Clarence A. McArthur, finding himself stricken by a fatal malady, executed to his wife the power of attorney which has been quoted above. Nothing could be more sweeping and complete than the language of this paper. It is quite evident that it was the purpose of McArthur to turn the complete management of his complicated affairs over to his wife. His business was involved; he was burdened with debts; his finances were in desperate straits; he was close to insolvency. It was necessary to make all sorts of shifts and turns to save his estate from the advances of his creditors. Having this in mind, apparently, he authorized his wife to sell any or all of his personal property for the best prices she could obtain. He gave her authority to sign good bills of sale. He authorized her generally to transact all his business as fully as he could have done. The paper was practically a carte blanche. Mrs. McArthur was specifically authorized to sell the property in question. Had she sold, instead of mortgaging, her right to sell could not have been attacked. But she was unable to sell the property in question to Smallman & Spencer Company, and she concluded that the next most advantageous thing to do would be to mortgage. This step seemed absolutely necessary in order to placate these creditors.

It seems to us that the power of attorney under which she acted fully warranted Mrs. McArthur in executing the mortgage. It was her only way out. To hold that she did not have authority to mortgage when she had been specifically empowered to sell, would narrow the authority conferred upon her within limits never contemplated by her husband. We should not so cramp the scope of the authority conferred by the husband upon the wife as to abrogate contracts made by her in good faith. A power of attorney, like any other paper, must be given a reasonable interpretation. Giving the document under consideration such an interpretation, it must be held that Mrs. McArthur was fully authorized to execute the chattel mortgage.

Having reached this conclusion, it is unnecessary to pass upon the other questions presented by the appeal, and it follows that the decision of the surrogate should be reversed, with costs.

Decree reversed on law and facts, and the matter remitted to the surrogate for further consideration. All concur; LYON, J., in result.

The court disapproves of the finding that the executrix, when acting as agent of her husband, did not have authority to make the mortgage in question, and that her account should be surcharged with the sum of $4,100.33.