Argued February 23, 1944; decided April 13, 1944.

*Jos. G. Blum* and *Joseph H. Stein* for appellant. I. The authority granted by treaty to the Consul-General of the Republic of Poland to appear for heirs and legatees in the administration and distribution of estates embraces the right to appear in behalf of a surviving spouse. (*Rocca* v. *Thompson,* 223 U. S. 317; *Matter of D'Adamo,* 212 N. Y. 214.) II. Consular representatives are authorized, by virtue of their office, to represent the interests of absent, minor or incompetent nationals of their state within their consular districts in proceedings before the courts or other authorities of the receiving state, and to initiate and defend actions, and in general to do what the individual himself might do to defend his interests. (*The Anne,* 3 Wheat. 435; *The Antelope,* 10 Wheat. 66; *The Adolph,* Curtis 87 Fed. Cas. 786; *Robson* v. *The Huntress,* Fed. Cas. 11971; *Rocca* v. *Thompson,* 223 U. S. 317; *Matter of D'Adamo,* 212 N. Y. 214; *Matter of Bristow,* 118 N. U. S. 686; *The Bello Corrunes,* 6 Wheat. [19 U. S.] 152; *McDonough* v. *Dannery,* 3 Dallas 188; *Cohens* v. *Virginia,* 1821, 6 Wheat. 264; *Hamilton* v. *Erie R. R. Co.,* 219 N. Y. 343; *Hauenstein* v. *Lynham,* 100 U. S. 483; *Geofroy* v. *Riggs,* 133 U. S. 258; *Tucker* v. *Alexandroff,* 183 U. S. 424; *Asakura* v. *Seattle,* 265 U. S. 332; *Jordan* v. *Tashiro,* 278 U. S. 123; *Nielsen* v. *Johnson,* 279 U. S. 47; *Matter of Lobrasciano,* 38 Misc. 415.) III. Section 47c of the Decedent Estate Law, added by chapter 181 of the Laws of 1938, specifically includes a surviving spouse in the category of " heirs," " heirs at law," " next of kin " and " distributees." (*Matter of Koch,* 282 N. Y. 462.) IV. Since, by reason of the invasion and occupation of the Republic of Poland, the surviving spouse, a resident and national of that country, was incapable of exercising her right of election, its exercise in her behalf by the Consul General of the Republic of Poland was valid and in accord with the spirit and purpose of the statute. (*People* v. *Ryan,* 274 N. Y. 149; *Matter of McGarry,* 155 Misc. 467, 245 App. Div. 834, 270 N. Y. 514; *American Historical Society* v. *Glenn,* 248 N. Y. 445; *People* v. *Schweinler,* 214 N. Y. 395; *Matter of Altman,* 160 Misc. 812; *Brustein* v. *New Amsterdam Casualty Co.,* 255 N. Y. 137; *Jarl Co.* v. *Village of Croton-on-Hudson,* 262 N. Y. 551; *Matter of Byrnes,* 141 Misc. 346, 235 App. Div. 782, 260 N. Y. 465; *Matter of Blumenstiel,* 248 App. Div. 533; *Harding* v. *Harding,* 140

Ky. 277; *Friedman* v. *Andrews*, 293 Mass. 566; *Castleman* v. *Castleman*, 184 Mo. 432; *Matter of Hills*, 264 N. Y. 349; *Matter of Brown*, 212 App. Div. 677, 240 N. Y. 646; *Matter of Donnelly*, 172 Misc. 107; *Matter of Skwerys*, N. Y. L. J. October 17, 1940, p. 1132; *Anderson* v. *N. V. Transandine Handelmaatschappij*, 289 N. Y. 9; *Matter of Celenza's Estate*, 308 Penn. St. 186.)

*Thomas J. Snee* for respondent. I. The right of election granted to a surviving spouse by section 18 of the Decedent's Estate Law is a personal right. (*Matter of Brown*, 212 App. Div. 677; *Amherst College* v. *Ritch*, 151 N. Y. 282; *Matter of Hills*, 264 N. Y. 349; *Camardella* v. *Schwartz*, 126 App. Div. 334; *Flynn* v. *McDermott*, 183 N. Y. 62; *Matter of Altman*, 160 Misc. 812.) II. There was no proof offered by the Consul-General that the surviving spouse was alive when the notice of election was filed. (*Matter of Coffin*, 152 Misc. 619.) III. The right of election is a personal right to the surviving spouse and ends with death. (*Flynn* v. *McDermott*, 183 N. Y. 62; *Youngs* v. *Goodman*, 240 N. Y. 470.)

DESMOND, J. We gave permission for this appeal so that we might pass on this question: can the Consul-General of the Republic of Poland, under the existing treaty between his government and the government of the United States, and without direct authorization by, or communication from, his national who resides in Poland, validly exercise on her behalf the right accorded her by section 18 of the Decedent Estate Law, to "take against the Will" of her late husband? The will's only provision for the absent wife is a legacy of $100. Since the net estate amounts to about $8,500, it is obviously to her advantage that there be protection of her statutory right to take, in contravention of the will, one third of her husband's net estate. The grant of authority on which the Consul-General relies, in his effort to furnish such protection, is article XXIV of the 1931 "Treaty of Friendship, Commerce and Consular Rights" between Poland and the United States, reading as follows: "Article XXIV: A consular officer of either High Contracting Party shall, within his district, have the right to appear personally or by delegate in all matters concerning the administration and distribution of the estate of a deceased person

under the jurisdiction of the local authorities for all such heirs or legatees in said estate, either minors or adults, as may be non-residents and nationals of the country represented by the said consular officer with the same effect as if he held their power of attorney to represent them unless such heirs or legatees themselves have appeared either in person or by duly authorized representative."

The Surrogate agreed with the Consul-General's assertion that the latter is, under this treaty and under general international law, an attorney in fact for his national. He ruled, however, that the widow was not, in these circumstances, one of the " heirs or legatees " to whom the treaty refers and ruled further that any exercise of the " personal right of election " granted to the widow by section 18, requires " personal action by the benefited individual ".

In arriving at the meaning of the treaty we are bound to remember that it is the supreme law of the land (U. S. Const., article VI, *Geofroy* v. *Riggs,* 133 U. S. 258), that its words are to be taken liberally in the light of evident purposes (*Hauenstein* v. *Lynham,* 100 U. S. 483) and that, since the pact is done in counterparts, one in each language, little use can be made of local technical definitions of words. (*United States* v. *Percheman,* 7 Pet. 51.) When two constructions of a treaty are admissible, one restrictive of the rights that may be claimed under it and the other liberal, the latter is always to be preferred. (*Hauenstein* v. *Lynham, supra.*) " This Court would not readily lean to favor a restricted construction of language, as applied to the provisions of a treaty, which always combines the characteristics of a contract, as well as a law " (*The Bello Corrunes,* 6 Wheat. 152, 171). Those settled rules of construction forbid the employment of so restricted a meaning as was given below to the words " heirs or legatees ". While these are words of art when found in certain settings, they take on in an international treaty the broader intendments which the purposes of the " High Contracting Parties " require. It is not permissible, therefore, to exclude Mrs. Zalewski, as did the Surrogate, from the rank of " heir " on the ground that the case is not one of intestate distribution or to refuse her the protection due a " legatee " because her asserted right to take one third is not based on anything in the will. In truth, she is, even under local

meanings of the terms, both an " heir " (by statutory defini-
tion, Decedent Estate Law, § 47-c) and a " legatee " (since the
will contains a small bequest to her). This treaty will be
receiving something less than " liberal " treatment if she is
held not to be one of the persons for whom the Consul-General
may intervene in our Surrogate's courts.

The narrow meaning given below to the words of the Statute:
" personal right of election ", must be discarded, also. The
distinguished Commission which drafted section 18 of the Dece-
dent Estate Law gave us a valuable clue to the meaning of
" personal right of election " when it informed the Legislature
(see 1928 report, note to § 18) that " Such right of election if
not previously exercised will be lost upon the death of the sur-
viving spouse and will not pass to his or her executor or admin-
istrator." " This is similar," wrote the Commission, " to the
personal right of the widow to elect against a testamentary
provision in lieu of dower, which right ends upon her death "
(citing *Flynn* v. *McDermott,* 183 N. Y. 62; *Camardella* v.
*Schwartz,* 126 App. Div. 334; *Youngs* v. *Goodman,* 240 N. Y.
470). We find no basis for a holding that " personal " means
anything more in this statute than it did in the dower cases,
which the Commission cited. Under those cases, the " per-
sonal " character of the election had the result that the privilege
of a widow to elect to take her dower rights did not pass to
her legal representatives. (*Flynn* v. *McDermott, supra,* at
p. 65; *Youngs* v. *Goodman, supra,* at p. 473.) That this was
what the Legislature had in mind when it inserted the word
" personal " in section 18 has been held in many Surrogate
Court decisions since *Matter of Mihlman* (140 Misc. 535). The
Commission's own indication as to the significance of the word
" personal " in section 18 makes it unnecessary, we think, to rely
on the legislative admonition that these statutes " shall be
liberally construed " to carry out the intention " to increase
the share of a surviving spouse in the estate of a deceased
spouse " (L. 1929, ch. 229, § 20; see *Matter of Byrnes,* 260
N. Y. 465, 472).

Of course the right to elect is " personal " in the sense that
an election must in each case be a conscious, individually made
choice between the statutory provision and the testamentary

provision. (See *Matter of Hills,* 264 N. Y. 349, 355.) The statute (§ 18, subd. 7) says that the choice between those alternatives shall be made " by serving written notice of such election upon the representative of the estate ", but nothing suggests that the Legislature intended thereby to require a writing subscribed by the widow's own hand. It has been assumed that the act prescribed may be performed by the spouse herself " or by her duly authorized agent or attorney in fact " (*Matter of Banks,* 31 N. Y. S. 2d 652, 655). In the Supreme Court of Pennsylvania there is direct authority that such a notice of election may be signed, on behalf of the widow, by one holding a power of attorney in general terms which did not specifically confer authority to make such an election. (*Celenza's Estate,* 308 Penn. St. 186.) The Appellate Division, in its opinion for affirmance in the present case, expressed the view that neither the common law nor the treaty entitled the Consul " to exercise a right which was personal to the widow." (265 App. Div. 878.) It made the further observation that " the office of the Consul is no more extensive in that respect than that of a committee of an incompetent " (citing *Matter of Hills,* 264 N. Y. 349, 353; *Matter of Brown,* 212 App. Div. 677, 679, affd. 240 N. Y. 646). That view fails, we think, to take into account the controlling fact that the Polish-American treaty in terms gives the Consul-General the same powers as if he held a power of attorney from the " heirs or legatees ". The *Brown* case (*supra*) asserted the power of a court of equity to make an election, as to dower, on behalf of an incompetent widow. Section 18 gives statutory sanction to such an exercise of equitable powers, for the safeguarding of an insane widow's rights under section 18. But we are here examining into the authority of one who by treaty has been constituted the attorney in fact of his absent national. Powers of attorney to represent interested parties have traditionally been recognized in the Surrogate's Court. (See Surrogate's Court Act, § 231-b.) No limitation of this Consul's agency is expressed in the treaty save only that he is not to act if the heirs or representatives themselves have appeared in person or by duly authorized representatives. The Consul's treaty-created power of attorney is, like any similar grant, " to be construed according to the natural meaning of the words in

view of the purpose of the agency and the needs to its fulfillment '' (*Porges* v. *U. S. Mortgage & Trust Co.,* 203 N. Y. 181, 188). It is to be interpreted in the light of the situation, the parties, the subject matter involved, and general usages. (Restatement of the Law of Agency, §§ 32, 34, 37.) The coverage of the agency must not be so strictly delimited as to defeat its very purpose. (*Matter of McArthur,* 173 App. Div. 517, 519.) We think the narrowing walls erected by the courts below go far toward barring the Consul from all right to do anything effective or practical in the interest of his absent fellow-countryman. His commission from his government (and from ours) to '' appear '' for Mrs. Zalewski and to '' represent '' her must, in common sense, assign to him duties more helpful and useful to her than that of merely standing mute at the bar of the Surrogate's Court.

Whatever the word '' appear '' may mean in the case of attorneys at law, it does not operate to narrow the role of the Consul to that of a mere spokesman, powerless without specific instructions, especially when the word '' appear '' is linked in the treaty with the explanatory clause '' as if he held their power of attorney to represent them ''. If the Consul had definite instructions from his national, he would not need the treaty as his credential. If the absent national had communicated her wishes to any '' duly authorized representative '', article XXIV would be out of the picture. The result of the decisions below in this proceeding is to close the doors of the court on the Consul, unless he can show formal authorization from his national, whereas the treaty shows on its face that the Consul is to take part in the proceedings only when there is absence of any such formal authorization running to him or to anybody else. (See *Matter of Kolodziej,* 153 Misc. 115.)

The effect we give herein to article XXIV is not only a '' sensible and reasonable '' one (*Hamilton* v. *Erie R. R. Co.,* 219 N. Y. 343, 353) but is in harmony, also, with the long trend of authority in this country. Discussions as to the nature and extent of consular authority to represent nationals in our courts usually begin with the case of *The Bello Corrunes* (*supra*) decided in 1821. That decision was cited by the Surrogate in his opinion here, as stating '' a familiar principle of law that foreign con-

sular representatives are deemed international attorneys in fact for their nationals ''. (177 Misc. 384, 386.) In *The Bello Corrunes* the Spanish Vice-Consul could point to no treaty provision setting forth his rights; nonetheless he was held entitled, by virtue of his office, to the privilege of suing in one of our courts of Admiralty, for return of a ship owned by Spaniards, whose very names he did not know. '' A Vice-Consul duly recognised by our Government '', wrote Justice JOHNSON '' is a competent party to assert or defend the rights of property of the individuals of his nation, in any Court having jurisdiction of causes affected by the application of international law '' (p. 168). A few years earlier Justice STORY, on circuit, wrote an opinion in *Rowe* v. *Brig* (Fed. Cas. No. 12093) upholding the right of a Spanish Consul to defend in court, on behalf of absent and unknown Spanish owners, against a claim made by salvors. In 1851 another Federal judge wrote (*Robson* v. *Huntress,* Fed. Cas. No. 11971) that '' The right of a consul to intervene on behalf of citizens of his own country who are absent but interested, seems too well established in practice to be doubted ''. In Alabama (*Carpigiani* v. *Hall et al.,* 172 Ala. 287) the court found authority in '' the law and comity of nations '' for allowing the Italian Consul, without treaty provision or authorization by his interested nationals, to petition for the removal of an administrator who had obtained his appointment through fraud. The New York decisions have followed this trend. In *Matter of Tartaglio* (12 Misc. 245, 246) a much-cited case, the court, while passing on the right of an Italian Consul to demand and receive for his nationals their distributive shares of an estate, wrote that the word '' defend '' in the applicable treaty '' is to be given the broadest meaning, and includes the power to maintain affirmatively the rights of the consul's countrymen, and our local as well as federal judiciary must, in obedience to the treaty, recognize such rights.'' The Surrogate in that opinion expressed the view that '' in the absence of such treaty provision a foreign consul would have much the same power.''

The power of the Consul to bring suits and take positions in court is not to be considered as limited to the mere conservation of property or the collection of liquidated claims. Numerous decisions uphold his right to stand on a broader platform.

The leading case of *In re Herman's Estate* (158 Minn. 274) affirmed the Consul's right to file objections to a will. In *Szabo's Estate* (143 N. Y. S. 678) Surrogate FOWLER, citing *Carpigiani v. Hall* (*supra*) wrote that he had no doubt as to the Austrian Consul's right to petition for the revocation of letters testamentary issued to another. This court, in *Hamilton v. Erie R. R. Co.* (*supra*) while denying a Consul's right to compromise a claim of his nationals in an action for negligently causing death, did not circumscribe the Consul's activities on behalf of his nationals in a Surrogate's Court proceeding. In *Hunko v. Buffalo Crushed Stone Co.* (203 App. Div. 284) a Vice-Consul was recognized as a proper person to file a claim for workmen's compensation where the widow of the deceased workman resided in and was a citizen of a foreign land (for a similar holding, as to a suit under an Employer's Liability statute, see *Ljubich v. Western Cooperage Co.* [93 Ore. 633]). Consuls have been found qualified to represent alien infants in accounting proceedings. (*Matter of Bristow*, 63 Misc. 637; *Matter of Ostrowski*, 160 Misc. 482.) No case has been found wherein there has been directly passed upon the right of a Consul to make a formal election for his nonappearing national, but we see no reason why his broad powers should stop short of that. The bringing of or defense of a lawsuit, the enforcement of any claim or the filing of any sort of objection in Surrogate's Court, always involves the making of an election of one kind or another. Our courts will, as they did in *Hamilton v. Erie R. R. Co.* (*supra*) protect the absent party against any assumption by a Consul of power to give away, release or sacrifice the absent party's rightful claims, but no such adverse action by the Consul-General is involved here. The situation here disclosed clearly calls for more than a mere collecting in for the widow of her legacy and the property set off to her under section 200 of the Surrogate's Court Act (to which exempt property the Surrogate held the Consul could make claim). The Consul-General, we think, might well take his stand on the rule as stated by a company of recognized scholars in the Harvard Law School's "Research in International Law" (p. 278): "Inquiry, preliminary intervention and conservatory measures may not prove sufficient to protect the interest of an absent,

minor or incompetent national of the sending state. In that case the consul is entitled by this paragraph to represent such national in proceedings before the courts or other authorities of the receiving state, initiating and defending actions and in general doing what the individual himself might do to defend his interests under the local law if he were present and competent. The consul must of course conform to the local law. While in representing his absent national he would be an attorney in fact, he could not appear as attorney in law unless a member of the bar of the court before which he acts (see Mexico, Law 1859, Art. 10, par. 2).''

The Legislature of this State, in a statute passed in 1936 and which applies only to estates smaller than this one, conferred upon Consuls much more complete power and duties of representation than are here asserted by the Consul-General. By that enactment (Surrogates Court Act, § 56-a) it is provided that when the gross estate is less than $2,000, or a non-resident alien's interest is worth less than $300, service of process on the alien may, by Surrogate's order, be made on the nearest Consul of the nation of which the alien is a national, and any and all other service on the alien, even by mailing, may be dispensed with. Service on the Consul, says section 56-a, '' shall be deemed personal service upon such alien within the state.'' When so served, the statute says, the Consul '' may appear and act on behalf of his national in the proceeding unless and until the national shall himself appear either in person or by other duly authorized representative.'' While section 56-a cannot be applied in this estate, because of the amounts involved, it is at least an expression of public policy not at variance with the result we reach in this opinion.

Finally, we are confirmed, in our view that this treaty makes the Consul more than a mere conservator or protector of property, by other articles of this 1931 Polish-American Treaty. Articles XX and XXII empower him to take appropriate steps toward such conservation and protection, but articles XXI and XXIII go much farther (as does article XXIV, which we are here construing) by according him the right to '' appear personally '' in matters concerning claims for nonsupport of nonresident minor children against a father who is a resident alien, and

the right to assert claims for workmen's compensation on behalf of his absent countrymen. On all the authorities and precedents, we conclude that this Consul-General is, for present purposes, a personal agent of his national, charged with " doing what the individual himself might do to defend his interests under the local law if he were present and competent " (Harvard Research, *supra*).

The order of the Appellate Division and the decree of the Surrogate's Court, so far as appealed from, should be reversed, with costs in all courts to both parties payable out of the estate, and the matter remitted to the Surrogate's Court for further proceedings not inconsistent with this opinion.

LEHMAN, Ch. J. (dissenting). Josef Zalewski died on September 17, 1940. In his will he bequeathed the sum of one hundred dollars to his wife Felicja Zalewski. Felicja Zalewski is a resident and national of the Republic of Poland. The will was admitted to probate and letters testamentary were issued to the executor named in the will. The Consul-General of the Republic of Poland executed, served upon the executor and filed an instrument, stating: " I, Hon. Dr. Sylwester Gruszka, Consul General of the Republic of Poland * * * acting on behalf of the surviving spouse of Joseph Zalewski, deceased, to wit, Felicia Zalewski, a resident of the Republic of Poland * * * do thereby exercise the personal right of election given the said Felicia Zalewski, pursuant to the provisions of Section 18 and the Decedent Estate Law, and do hereby elect, on behalf of the said Felicia Zalewski, to take her share of the estate of the said decedent as in intestacy." Thereafter the executor brought proceedings to settle his account and the Consul-General appeared and filed objections on behalf of the testator's spouse. His power to " exercise the personal right of election given the said Felicia Zalewski " was challenged, and the courts below have sustained the challenge.

I concur in the opinion of Judge DESMOND insofar as it holds that the " personal right of election " given to the surviving spouse of a testator by section 18 of the Decedent's Estate Law is " personal " only " in the sense that an election must in each case be a conscious individually made choice between the statutory provision and the testamentary provision." I

assume, too, that authority to sign the notice of election may be delegated to an attorney in fact by the surviving spouse and that a power of attorney in general terms may sufficiently evidence an intention by a widow to " delegate   *   *   * the signing of the paper declaring her election not to take under her husband's will " at least where it appears that the general power has been executed by the widow for the purpose of enabling the attorney in fact to assert the widow's personal right of election.  (*Celenza's Estate,* 308 Penn. St. 186.)   Nonetheless, there is no " conscious individually made choice " by a surviving spouse unless that choice is made by the spouse or by a person authorized to act in her behalf.  The appellant asserts that the power to make that choice in behalf of a resident and national of the Republic of Poland has been conferred upon him as Consul-General by Treaty between the United States and the Republic of Poland.  The problem presented upon this appeal is whether it was the intention of the two sovereign states to confer upon the consular officers such power to act in behalf of their nonresident nationals.

The appellant relies upon article XXIV of that Treaty as quoted in the opinion of Judge Desmond.  The only right or power expressly conferred by that section upon a consular officer is " the right to *appear* personally or by delegate in all matters concerning the administration and distribution of the estate of a deceased person   *   *   * for all such heirs or legatees in said estate   *   *   * as may be non-residents and nationals of the country represented by the said consular officer with the same effect as if he held their power of attorney to represent them   *   *   *." I agree that the words of a treaty are not to be given a restricted technical construction which would impede the fulfillment of the purpose of the treaty. The purpose of the section of the Treaty upon which the appellant relies is clear.  To protect the property interests of his nonresident nationals in an estate of a deceased person, a consular officer may " appear " and " represent " them in every form of judicial or administrative proceedings.  No construction of the words " heirs or legatees in said estate " is reasonable if it excludes a person who under our law has a right to share in the estate under a will or as in intestacy. I cannot, however, find in the Treaty any indication of a purpose

to confer upon a consular officer power to exercise in behalf of a nonresident national a " personal election," i.e., a conscious, individually made choice between the statutory provision and the testamentary provision — nor do I think that by any process of liberal construction can the power to " appear " and " represent " heirs and legatees in the estate be stretched to include power to exercise such a choice for one of them.

In no cited case has a court sustained an assertion of power in consular officers to do more than act for the protection of rights granted to their nationals by law. The courts have drawn back whenever they were asked to sanction an exercise of any broader power by a consular officer. Thus, in *The Bello Corrunes* (6 Wheat. 152, 168) the court said: " a Vice Consul duly recognised by our Government, is a competent party to assert or defend the rights of property of the individuals of his nation, in any Court having jurisdiction of causes affected by the application of international law. To watch over the rights and interests of their subjects, wherever the pursuits of commerce may draw them, or the vicissitudes of human affairs may force them, is the great object for which Consuls are deputed by their sovereigns; and in a country where laws govern, and justice is sought for in Courts only, it would be a mockery to preclude them from the only avenue through which their course lies to the end of their mission. The long and universal usage of the Courts of the United States, has sanctioned the exercise of this right, and it is impossible that any evil or inconvenience can flow from it. Whether the powers of the Vice Consul shall in any instance extend to the right to receive in his national character, the proceeds of property libelled and transferred into the registry of a Court, is a question resting on other principles. In the absence of specific powers given him by competent authority, such a right would certainly not be recognized."

Again, in *In re Herman's Estate* (159 Minn. 274) cited by Judge DESMOND as a leading case, the court said " A consul may doubtless take appropriate measures for the protection of the property interests of the citizens of the country which he represents in cases where they have no other representative and are not present to act for themselves. But he acts merely

in his official capacity as the representative of his government, and not as the personal agent or representative of the parties in interest, unless he has been given special authority to act for and represent them (citing cases). His acts are provisional and for the purpose of preserving the property and securing for his nationals an opportunity to assert and maintain their rights thereto. * * * We have been cited to no case, and we have found none, holding that a consul, simply by virtue of his office, has power to act for and represent individual claimants to property, so as to foreclose their claims thereto, without special authority from them to do so.''

The exercise of the personal right of election '' requires the abandonment or destruction of an alternative right.'' (*Matter of Hills,* 264 N. Y. 349, 353.) The statute which creates the right of election does not make its exercise subject to the approval of the court. It confers absolute freedom of choice on the surviving spouse of a testator. Many personal considerations usually influence that choice, and no person other than the surviving spouse can weigh these considerations. If a consular officer can exercise the '' personal '' right of election conferred upon a surviving spouse as if he had a power of attorney for that purpose he may destroy the alternative right which the spouse whom he represents might prefer and there is nothing in the statute or in the Treaty which would empower a court to refuse to give effect to the choice so made though it might be patently unwise. In this case the bequest which is abandoned is small, and perhaps the choice made by the consular officer may be wise and would be approved by the court. The Legislature has not, however, made the right to reject a testamentary provision dependent upon its inadequacy, and if under the Treaty that right may be exercised in behalf of a nonresident national by a consular officer, no restriction upon such exercise is expressed in the Treaty or can be read into the Treaty by fair implication.

The words '' a consular officer * * * shall * * * have the right to *appear* * * * for all such heirs or legatees * * * as may be nonresidents and nationals of the country represented by the said consular officer *with the same effect as if he held their power of attorney* '' are not fairly open

to the construction that the consular officer may act for them in all matters as if he held their general power of attorney. He has the right to " appear " for them as if he held their power of attorney, and under the Treaty he can exercise no other right. He may be authorized to act as their personal agent so far but no further. He may " assert or defend the rights of property of the individuals of his nation, in any Court ". He is not authorized to exercise for a national a personal choice to take an intestate share of the testator's estate in lieu of any provision made for the benefit of the national in the will.

Order should be affirmed.

LOUGHRAN, CONWAY and THACHER, JJ., concur with DESMOND, J.; LEHMAN, Ch. J., dissents in opinion in which RIPPEY and LEWIS, JJ., concur.

Order reversed, etc.