In the Matter of the Estate of GUSTAV HERTER, Deceased.
Surrogate's Court, New York County, June 18, 1948.

*John F. X. McGohey, United States Attorney* (*Laurence H. Axman* and *David L. Bazelon* of counsel), for Tom C. Clark, Attorney General of the United States, as successor to the Alien Property Custodian, petitioner.

*Kenneth M. Spence* and *Julius J. Teller* for Paul Van Anda, as administrator *c. t. a.* of Gustav Herter, deceased, and others, respondents.

DELEHANTY, S. Deceased, a German national, died resident there on March 6, 1945. He was survived by a widow. He left no issue. By a will dated January 25, 1939, and admitted to probate here he gave all his property in the United States to his brother, Morris Herter, residing in France. The brother

predeceased the testator. He was a citizen of the United States and left surviving him four children who are all American citizens. These four claim the benefit of the gift to their father perforce the provisions of section 29 of the Decedent Estate Law. After making the provision for his brother, deceased goes on to say '' in lieu of dower my beloved wife, Dina Henrietta Johanna Herter, shall receive per annum twenty percent of the net income of the real property.'' Such provision for deceased's widow, if dealt with separately and apart from any benefit in deceased's estate otherwise received by her, is less than her intestate share, if such share be computable under section 18 of the Decedent Estate Law.

The widow is domiciled in Germany and was so domiciled when deceased died. Her interests in the estate are dealt with in Vesting Order No. 8407 dated March 11, 1947, and an amendment thereto dated April 29, 1947, whereby the Attorney General of the United States as successor to the Alien Property Custodian vested '' all right, title, interest and claim of any kind or character whatsoever of '' the surviving spouse. The original Vesting Order says that such property was vested '' to be held, used, administered, liquidated, sold or otherwise dealt with in the interest of and for the benefit of the United States ''. The order further certifies that it was '' deemed necessary in the national interest.'' An additional instrument dated March 26, 1947, was executed by the Attorney General and served upon the fiduciary of this estate. The instrument declares that the Attorney General of the United States as successor to the Alien Property Custodian '' does hereby elect, pursuant to section 18 of the Decedent Estate Law, to reject the said last will and testament and the whole thereof including any and all provisions made for Dina Henrietta Johanna Herter, the surviving widow of Gustav Herter, deceased, in said last will and testament; and, in the place and stead of the provisions therein made for her benefit, does hereby elect to take the share in the estate of the said decedent to which the surviving widow would be entitled had Gustav Herter died intestate. The money and property to be received as the result of this election shall be determined in accordance with the provisions of section 18 of the Decedent Estate Law.'' While the Vesting Order and the purported notice of election do not so state, it is undoubtedly the intention of the instrument to refer to the Decedent Estate Law of the State of New York.

The April 29, 1947, amendment to the original Vesting Order consisted of deleting the reference to '' all right, title, interest

and claim of any kind or character whatsoever of '' the surviving spouse and by substituting therefor a recital that '' the right of said Dina Henrietta Johanna Herter under section 18 of the Decedent Estate Law of New York to file an election to take her share of the estate of Gustav Herter, deceased, as in intestacy, and all other right, title, interest and claim of any kind or character whatsoever of said Dina Henrietta Johanna Herter in, to and against the estate of said Gustav Herter, deceased, is property or an interest therein owned or controlled by, payable or deliverable to, or claimed by, the aforesaid national of a designated enemy country (Germany) ''. The amendment reaffirms the provisions of the original Vesting Order which said that the action was taken because '' deemed necessary in the national interest '' and which said that the property was '' to be held, used, administered, liquidated, sold or otherwise dealt with in the interest of and for the benefit of the United States.''

·The estate fiduciary has filed in this proceeding an affidavit to which he attaches a German text purportedly subscribed by the surviving spouse. A translation of the German text states:

'' Stuttgart, January 26, 1948.

I herewith renounce all my rights to, share of — be it as wife, heir at law, by will or legacy — the property of my deceased husband, as well with respect to real as personal property, which is actually located in the United States of America.

I therefore renounce all my rights to participate in administration which I may have in respect to the aforesaid property in the United States of America under the German law as well as under the law of New York or any other law.

DINA HENRIETTE JOHANNA HERTER·''.

This paper bears date January 26, 1948 — which was some four weeks after the Attorney General of the United States as successor to the Alien Property Custodian initiated in this court a proceeding by petition to determine the validity of the purported exercise by him of the right of election which the Attorney General as successor to the Alien Property Custodian claims to be entitled to enforce pursuant to his Vesting Order as amended and the notice quoted. The affidavit says merely that the paper was delivered to the estate fiduciary by one of the legatees. No other proof of its authenticity is supplied and for that reason alone proof would be needed to establish that in fact it had been executed by the surviving spouse.

If actually executed by the surviving spouse the question is presented whether or not its execution after the making of the Vesting Order could have any effect upon the right of election. The broad language in *Stoehr* v. *Miller* (296 F. 414, 425) appears to justify the conclusion that the renunciation, if executed by the spouse, would defeat the Vesting Order. In the cited case the Circuit Court of Appeals of the Second Circuit had under consideration a renunciation of what were described as equitable rights in property by reason of a declaration of trust made in favor of the " enemy ". The " enemy " renounced the benefit after the date of the Vesting Order. The Circuit Court of Appeals said: " This court is not concerned with the motive which may have induced the renunciation. The cestuis que trustent were in honor and in all good faith bound to renounce. But if their renunciation had been made in order to defeat the seizure which the Alien Property Custodian had made it would be quite immaterial. They owed no duty to the United States, and the seizure of the property by the Alien Property Custodian did not deprive them of their right to renounce. We fail to see how their renunciation defeated any lawful purposes of the Trading with the Enemy Act. If the consequence of the renunciation is to revest the property in the hands of an American citizen no wrong to the United States is done."

Here the parties appear to be in agreement that the renunciation, if effective and if executed by the spouse, is to leave unimpaired the property rights claimed by American citizens. It is pertinent to say with the Circuit Court of Appeals that if that is the consequence " no wrong to the United States is done." The cited case seems to warrant the holding that the renunciation is effective, if so signed.

However, the matter can be disposed of without requiring any factual proof. The argument of the Attorney General as successor to the Alien Property Custodian is in brief that the spouse had a property right which was subject to seizure before any election was made by the spouse; that the Vesting Order gave to the Attorney General as successor to the Alien Property Custodian the same authority to elect which theretofore had resided in the surviving spouse; and that the instrument of March 26, 1947, purporting to exercise the right of election of the surviving spouse effectively vested the Attorney General as successor to the Alien Property Custodian with the intestate share payable to the surviving spouse. Reliance is placed upon the text of section 18 of the Decedent Estate Law, upon the report of the Commission to Investigate Defects in

the Laws of Estates which recommended the legislation and upon the authorities which construed the section, including *Matter of Zalewski* (292 N. Y. 332). The parties are in agreement that the question here presented is one of first impression in this jurisdiction. The only case in any other jurisdiction to which reference is made by the Attorney General is plainly distinguishable (*Estate of Ferraro,* Orphan's Court, Allegheny Co., Pa., No. 6165 of 1941). In that case an attorney was designated to appear for and to represent the spouse. The election filed by such attorney was in the interest of and in behalf of the spouse. The recognition of such election was held justified by the State of the Pennsylvania law. There was present in that estate no seizure order such as is here present and the case for that reason is not useful in solving the problem here.

Here the terms of the vesting orders state explicitly that the action of the Attorney General as successor to the Alien Property Custodian is in hostility to the spouse. The terms say that such property rights as she has are to be seized because that act is " deemed necessary in the national interest ". The terms say that any property acquired by the vesting orders is " to be held, used, administered, liquidated, sold or otherwise dealt with in the interest of and for the benefit of the United States ". Consideration of these terms makes it obvious that *Matter of Zalewski* (*supra*) heavily relied upon by the Attorney General is without pertinence. In the *Zalewski* case the question was whether a consul, acting patently in the interest and for the monetary benefit of his national (*after she was cited on an accounting and had defaulted*), could act in her behalf under the terms of a treaty which the court held constituted the consul the attorney in fact for the consul's national. The case held that the consul had that authority to act under the treaty. The discussion in the case emphasized that the action of the consul was in the interest of his national. The text of the opinion said that the right to elect was not so " personal " as to make necessary the individual signature to the notice of election by the spouse herself. The decision went no further and the case stands for nothing more than that when understood in the light of the facts existent in the record before the Court of Appeals. It had already been held that a spouse might act through an attorney in fact. The *Zalewski* case expanded that idea so as to say that an attorney in fact appointed by treaty or statute could act as well as an attorney in fact personally designated by a spouse.

The Attorney General of the United States as successor to the Alien Property Custodian is not constituted an attorney in fact. He is the arm of the executive, acting under the war powers of the executive in the interest of the United States and in hostility to the interests of the enemies of the United States. He is in no sense a representative of a surviving spouse for the purpose of bringing into existence rights which are created solely in the interest of the spouse. The interests of the spouse are the objective of the grant of the right of election in the inheritance laws of this State. The grant is not a self-executing one. It is surrounded by limitations both as to amounts which may be claimed under varying conditions, as to the right to make claim at all and as to the time within which and the form in which the claim must be made, if at all. That the statutory program was enacted in the interest of the spouse solely is made clear by the limitations to which reference has just been made. Spouses who have taken steps destructive of the marital bond are not entitled to elect. Spouses for whom an outright gift up to a particular money level has been provided and for whom also other benefits are provided up to the level stated in the act may not vary the will in anywise by election. The act operates to give the spouse the right to have a limited amount of cash where no outright provision is made for the spouse but no other attack on the will can be made if its terms otherwise meet the standard of the act. There is no automatic grant in any part of the text of the act. The act grants no property right *in esse* but only a property right *in posse* which springs into existence only if the statutory right is exercised under conditions which create the right only as of the time of the exercise of the election. The terms of the will remain wholly effective to dispose of the entire property of the testator unless and until a valid election is made by a spouse entitled to make it.

The genesis of section 18 of the Decedent Estate Law is found in the reports of the Commission to Investigate Defects in the Laws of Estates. Those reports and the act itself state that the right of election is " a personal right ". Its personal character is shown by the citation in the commission's report of the case of *Camardella* v. *Schwartz* (126 App. Div. 334). There the Commission in Lunacy of the State of New York was held disentitled to elect in behalf of an incompetent spouse between her dower and a provision in a will. There the commission was obviously acting in the interest of the State of New York

to secure funds to reimburse it for the support of the incompetent widow. The court in the cited case said that the attempt to exercise the right of election must fail since "the right to elect is a purely personal one in the widow". This reference to this earlier dower case by the Commission to Investigate Defects in the Laws of Estates illuminates the point here in issue. Other provisions in the act show the personal objective of an election. The text gives a guardian of an infant spouse the right to make an election. It permits an incompetent spouse to elect only when authorized by the Supreme Court. A guardian must be guided by the real interests of the infant. A committee under court supervision must likewise be guided by the real interests of the spouse. The guardian and the committee must act as fiduciaries and must make such choice as is best *personally* for their respective wards.

Thus every indication of a legislative purpose ·confirms the view that no person or agency *acting in hostility to the spouse* may exercise the right of election granted by our statute. Accordingly it is held as matter of law that the instrument executed under date March 26, 1947, by the Attorney General as successor to the Alien Property Custodian is insufficient to alter in any respect the terms of the will of deceased or to create any property right subject to a Vesting Order.

Submit, on notice, decree adjudging to be invalid and without effect the purported exercise of a right of election against the will of deceased.