In re Estate of Mikolas Klekunas a/k/a Mike Klekunas, Deceased.

B. R. Pietkiewicz, Executor of the Estate of Mikolas Klekunas, Deceased, Appellant, v. Petras Dauzvardis, Appellee.

Gen. No. 49,696.

First District, Third Division.

February 18, 1965.

Eugene R. Pietkiewicz, of Chicago, for appellant.

Black and Beermann and Charles V. Chesnul, all of Chicago (Benj. H. Black and Charles V. Chesnul, of counsel), for appellee.

MR. PRESIDING JUSTICE DEMPSEY delivered the opinion of the court.

The Probate Division of the Circuit Court of Cook County permitted the Consul General of the Republic of Lithuania to renounce a will on behalf of a surviving spouse who is a resident of Lithuania. The executor of the estate of Mikolas Klekunas the deceased spouse and the maker of the will, appeals from the order allowing the renunciation.

Mikolas Klekunas, a long-time resident of the United States, died in 1961 at the age of 81 years. His estate, consisting of a two-story brick building and six savings accounts, totaled approximately $41,000. The will provided, after a few minor bequests to friends, that the bulk of the estate was to be placed in trust and two years after the testator's death distributed to his son Izydoris who lived in Lithuania, if political conditions there were such that he would receive substantial benefit and control of the estate. If this were not the case, the assets were to be held for an additional 13 years during which distribution was to be made if conditions changed. If the son died during this time, distribution was to be made under the same terms to his children. If, at the end of the 15-year period this could not be accomplished, the estate was to pass to a Chicago church named in the will.

The testator's wife was not mentioned in the will. A witness who had known Klekunas for over 40 years testified that his wife Barbara remained in Lithuania when Klekunas came to America, but he could shed no light on whether she was still living at the time of the testator's death.

In 1962, the defendant Petras Dauzvardis, the Consul General of the Republic of Lithuania in Chicago, filed a written renunciation of the will in behalf of Barbara Klekunas who, he stated, was a resident of Lithuania. There was nothing to indicate that Dauzvardis had communicated with her or that she was aware that he was appearing in her behalf. The renunciation was not signed by her personally but read: "Barbara Klekunas, by Petras Dauzvardis, Consul General of the Republic of Lithuania, her duly authorized and legal agent by operation of law." Dauzvardis' position was that, as consul, he possessed the right to act as the personal representative of his national without reference to any treaty or special grant giving him such power. The renunciation was accepted and an appropriate order entered. The executor moved to expunge the order from the record and the denial of that motion has resulted in this appeal.

Dauzvardis' position as consul was not challenged in this case and we do not seek to do so here. However, in view of the novel provisions of the Klekunas will and the peculiar political position of Lithuania at the present time, a word concerning the recent history of that unhappy country may not be amiss. In 1918 Lithuania, after many years of division and subjugation by both Russia and Germany, was reunited and became an independent republic. In 1939, following an agreement between Russia and Germany concerning respective zones of occupation and spheres of influence, Russia established military bases in Lithuania and in

1940 annexed the country. In 1941 control again changed hands when Germany invaded Lithuania and drove the Russian troops out. This situation lasted until nearly the end of 1944. The Russian army then returned, the communist form of government was established and Lithuania was soon incorporated into the Union of Soviet Socialist Republics as another federated republic. The Russian domination has remained unchanged to the present day. 17 Encyclopedia Americana (1955 ed) pp 583–596; 10 World Book Encyclopedia (1943 ed) pp 4055, 4056, et 1944, 1945 and 1946 supplements.

■ Many countries outside the communist bloc, including the United States, have not recognized the present government in Lithuania. They hold that the legal government is the one established prior to the Russian occupation of 1940. The consular officers of that government are still recognized as the representatives of their country and have continued to act as such. See: Lendraitis v. Gavene, 343 Ill App 644, 99 NE2d 691; In re Podkowik's Estate, 114 NYS2d 710. Thus, Dauzvardis is entitled to exercise the same rights and prerogatives as any other officer of a similar rank who represents a government recognized by the United States.

No explanation, however, has been offered as to how Dauzvardis' official capacity would enable him to act as a conduit of the widow's share of the estate. He has no official standing within the borders of Lithuania and governmental channels are closed to him. The government he represents has not controlled Lithuania for a quarter of a century. Its people are no longer citizens of the autonomous Republic of Lithuania but are citizens of the Union of Soviet Socialist Republics, and this is the government which exercises general jurisdiction throughout the whole of Lithuania. Under the prevailing conditions Dauzvardis' position

would seem to be more of a handicap than an asset in transmitting funds to Mrs. Klekunas.

The difficulty of forwarding money to a person residing in Lithuania, even when the forwarding is done by someone not anathema to the Russian authorities, was understood by Mikolas Klekunas. He allowed a 15-year period for the distribution of his estate in the hope that during this period political conditions in Lithuania would ameliorate so that his son would receive substantial benefit from the estate. Conditions in Lithuania have not changed since his death and Mrs. Klekunas is not shown to be in a better position to receive money from a foreign country than is his son. In fact the attorney for Dauzvardis explained, in oral argument in this court, that no effort was made to obtain a power of attorney from Mrs. Klekunas because her acknowledgment would have had to be taken before a Russian official and this would subject her share to confiscation. But whether her share can be gotten into her hands—even clandestinely—is not our problem. As was said long ago in Tartaglio's Estate, 12 Misc 245, 33 NYS 1121 (1895): "The question as to what disposition may be made of the property after the consul has received and exported it is something with which our courts have nothing to do; this is to be settled by the laws or authority of the government to which the foreign subject owes allegiance."

While these conditions point up the impediments confronting Dauzvardis they do not of themselves affect his general power as consul to represent Mrs. Klekunas. What must be determined here is his particular power to renounce a will on her behalf.

 The purpose of the statutory right of renunciation is to provide for the personal welfare of the surviving spouse by giving him or her a choice between what may have been bequeathed or devised under the will and the share of the decedent's estate provided for

75

by statute. The right to renounce a will is conferred by statute and it is personal to the surviving spouse. Ill Rev Stats, 1963, c 3, §§ 16–17; Rock Island Bank & Trust Co. v. First Nat. Bank of Rock Island, 26 Ill2d 47, 185 NE2d 890. The statute provides that the renunciation is to be a written instrument signed by the spouse. Chapter 3, section 17. Where the choice cannot be exercised because the surviving spouse is incompetent, the renunciation may be made by a conservator, a guardian ad litem or a next friend, acting not upon his own judgment but only pursuant to the direction of a court having jurisdiction of the subject matter and of the incompetent. In Re Estate of Reighard, 402 Ill 364, 84 NE2d 345; Davis v. Mather, 309 Ill 284, 141 NE 209; First Nat. Bank of Danville v. McMillan, 12 Ill2d 61, 145 NE2d 60; German Evangelical Orphans Home v. Seago, 155 Ill App 76. It is for a court to determine what choice is to the best interest of the spouse and it must do so from all the facts and circumstances in the particular case. We find no instance in Illinois of renunciation by a personal representative without an appropriate court order.

Dauzvardis bases his authority on rights which he says are to be found in the general law of nations. A careful review of authorities on the subject leads us to conclude that he must fail in this contention.

██ ██ A consul is a representative of a foreign government assigned to another country to promote and protect the commercial interests of the subjects of his government. 4 Am Jur2d, Ambassadors and Consuls, sec 11. He is empowered to safeguard their rights, to make certain that the laws of the country in which he serves are administered fairly as to them, and to represent them if need be in the courts to insure these ends. He can assert rights even if the claimants are unknown. The Bello Corrunes, 19 US 152, 6 Wheat 152, 5 L Ed 229 (1821). The powers and duties of

consuls rest upon international law, but the usual powers may be increased by treaty stipulations or by the laws of their own homelands. Vujic v. Youngstown Sheet and Tube Co., 220 Fed 390; 16 Am Jur 965, Diplomats and Consular Officers, sec 13. However, a consul is not, in the absence of some such additional grant of authority, the personal agent of his national. In Re Herman's Estate, 159 Minn 274, 198 NW 1001.

There have been cases in which consular officers have been allowed to renounce wills on behalf of surviving spouses but all are readily distinguishable from the present case. The cases turn either on valid powers of attorney or on the provisions of treaties which gave a power of attorney to the officers—both of which are lacking in the present case. For example, in the case of In re Skewry's Will, 33 NYS2d 610, the Consul General of the Republic of Poland had an appointment as attorney in fact from the surviving spouse, a resident and national of Poland, and had recorded the power in the court clerk's office. By virtue of this power of attorney he was permitted to exercise the right of election given the spouse under the New York statute.

In re Zelewski's Estate, 292 NY 332, 55 NE2d 184, 157 ALR 87, the case most heavily relied upon by counsel here, involved the construction of a treaty between the United States and Poland. Although the majority opinion (the court was divided four to three) discussed the general powers of the consul by virtue of his office, the decision of the court was predicated on its interpretation of the treaty. The treaty provided that a consular officer had the right to appear in all matters concerning the administration and distribution of the estates of deceased persons for all heirs and legatees who might be his nationals, with the same effect as if he held their power of attorney to represent them. The court first found that the widow was an heir and that

under the will in question she was also a legatee. It further found under the New York statute, which provided that the surviving spouse's right of election was personal and was to be made by serving written notice of election but which (unlike our Illinois statute) did not provide that the writing had to be signed by the spouse, that the written notice did not have to be subscribed by the spouse's own hand but the election could be performed on her behalf by her duly authorized agent or attorney in fact. After making these two preliminary findings the court went on to decide what it said was the primary question in the case: ". . . can the consul . . . under the existing treaty . . . without direct authorization by, or communication from, his national who resides in Poland, validly exercise on her behalf the right accorded her to 'take against the Will' of her late husband?" The court stated that the controlling fact in the case was that the terms of the treaty constituted the consul the attorney in fact for his absent national. Because of this, the court held that the Polish consul could make the election against the will of the testator in the absence of express authority to do so.

In the case of In re Celenza's Estate, 308 Pa 186, 162 A 456, the principal question was whether a widow's election to take against her husband's will could be exercised by her attorney in fact. The husband lived and died in our country but the wife resided in Italy. She executed a power of attorney to a resident of the United States authorizing him to act in her behalf in matters pertaining to her husband's estate. The attorney in fact elected to take against the will. The Pennsylvania statute, like that of Illinois, provided that an election was to be in writing signed by the surviving spouse. The court rejected the contention that the widow must always sign the election herself and said that this was a too narrow construction of

78

the statute because there could be situations when it would be impossible for her to do so, and held that she could delegate to an attorney in fact the signing of the paper declaring her election. The court concluded that the signature of the attorney in fact met the requirements of the law and that under the general powers given him he could validly sign the election in the widow's behalf.

It will be noted that in each of the above three cases the consul or person making the election on behalf of the surviving spouse either was her attorney in fact or functioned under a treaty which constituted him her attorney in fact. We have found no right of election case in which this was not so.

Indeed, it is generally held, even in those cases which do not come within the orbit of restrictive statutes but which involve decisions personal to the individual, that consular officers, unless possessing express authorization, are not recognized as the personal agent of their nationals. In re Herman's Estate, 159 Minn 274, 198 NW 1001; 3 CJS, Ambassadors and Consuls, sec 15(b). Contra: Zalezzi v. Tarantola, 138 NJ Eq 579, 49 A2d 482. Moreover, it has been held that a treaty will not be interpreted as abridging the laws of a state which pertain to estate matters unless the language of the treaty in unmistakable terms or by clear implication makes such abridgment necessary. Rocca v. Thompson, 223 US 317, affirming In re Ghio's Estate, 157 Cal 552, 108 P 516; 4 Am Jur2d, Ambassadors and Consuls, sec 20, p 104. Under Illinois law a surviving spouse, as we have seen, must personally elect to take or not to take under a will unless she is under a disability which prevents her decision, in which event her personal representative through authority received from the court may act in her stead. If a treaty is not to be interpreted as superseding state laws unless its plainly expressed language

requires such an interpretation, we do not see why, in the absence of a treaty, in the absence of any directive from a court and in the absence of a legal basis from which his power might be inferred, a consul acting in behalf of a foreign citizen should be given a privilege denied to a citizen of our own state.

We recognize that Mrs. Klekunas is under a political disability which makes communication with her difficult. Although this difficulty inhibits communication it does not prevent it, as can be seen from the executor's motion to vacate the order permitting Dauzvardis' renunciation in behalf of Mrs. Klekunas. The motion asserted that she had full knowledge of her husband's will and that she was not an incompetent person. The answer to the motion did not deny these assertions. Her political disability is not equivalent to a mental disability which prevents a rational choice nor is it equivalent to a physical one which makes impossible the signing of a renunciation and it is not one which enables a consul general, acting upon nothing more than the general powers of his office, to exercise her strictly personal right of renunciation.

We are of the opinion that in view of the circumstances of this case and under the decisions of our courts and the Illinois statute Dauzvardis was not empowered to renounce the will in behalf of Barbara Klekunas.

The orders of the Probate Division of the Circuit Court permitting the renunciation and allowing attorney fees are reversed. The cause is remanded with directions to expunge the orders.

Reversed and remanded with directions.

SCHWARTZ and SULLIVAN, JJ., concur.